St. Sure, Appellant, vs. Lindsfelt, Respondent.

*May 4 — May 24, 1892.*

*Divorce obtained in foreign country: Jurisdiction: Conflict of laws: Presumptions.*

1. The courts of a foreign country have no jurisdiction to dissolve the marriage relation between residents of this state.

2. Courts of this state will not presume the existence in a foreign country of any statute, law, or custom authorizing a divorce upon the conviction and sentence of the husband for an offense, where such conviction and sentence were without notice or hearing and after the husband had left such foreign country and become a resident of the United States.

3. Husband and wife came to this country from Sweden in 1842. They lived together here until 1852, when the wife returned to Sweden. In 1853 she filed there a petition for divorce, but in 1858 returned to this country, and again lived with her husband until he went to the war in 1863. In 1864 an ecclesiastical court in Sweden entered a decree of divorce upon the petition filed in 1853, upon the ground that the husband had absconded from the kingdom and had, in 1844 — two years after he had become a resident of the United States,— been sentenced as a cheater by a Swedish court. No statute, law, or custom authorizing a divorce for such cause is shown, nor does it appear that any notice of the divorce suit was given in any way to the husband, or that anything was done which, according to our laws, would give the Swedish court jurisdiction of his person. *Held,* that the divorce was a nullity.

APPEAL from the Circuit Court for *Sheboygan* County.

Adolph St. Sure Lindsfelt was married to Elise Concordia Von Krassow, May 27, 1835, at Rostoop, Sweden. As the fruit of such marriage they had eight children — four boys and four girls. One of them, the witness George, was born in Sweden in 1839. Adolph and wife came to America and settled at Syracuse, N. Y., in 1842. The plaintiff, *William O. St. Sure,* was born at that place. Adolph and his wife, Elise, and their children, came to Wisconsin,— first to Kenosha, then to Milwaukee, and afterwards to Sheboy-

gan.  About 1852, Elise, with their four daughters, returned to her friends in Sweden.   March 1, 1853, Elise filed a petition for divorce, on the ground that Adolph had absconded and had been sentenced as a cheater, December 11, 1844.   During the time she was in Sweden she and Adolph appear to have kept up a friendly correspondence, and he from time to time sent her money.   November, 1858, Elise returned to Wisconsin, and again lived with Adolph as man and wife until he went to the war, about 1863.  About 1863 Elise went to live with a man by the name of Smith, and was said to have married him.  January 19, 1864, and while Adolph was still in the war, he went through the form of marrying Elizabeth Sabine, at Cincinnati, Ohio.  February 3, 1864, at " a meeting of the consistory " under the presidency of the bishop and commander in Sweden, a decree of divorce was entered upon the petition so filed by Elise, March 1, 1853, from the said Adolph, as a late gentleman of the king's bed chamber.  About 1868 Elizabeth died, while living with Adolph as his wife in Sheboygan.  August 30, 1883, Adolph went through the form of marrying the defendant, *Olive St. Sure Lindsfelt*, at Portage, Wis. March 18, 1886, Elise died.

In May, 1887, Adolph died intestate at Sheboygan, leaving an estate of both real and personal property to be administered according to law.   June 21, 1887, the plaintiff in this action filed a petition in the county court at Sheboygan for administration of said estate, and thereupon Frederick Hoppe was appointed administrator thereof, and qualified as such, and as such delivered to the defendant, as the widow of said Adolph, the personal property and household furniture described, of the value of about $200, and the defendant carried away the same.  Said administrator was afterwards requested to take steps to recover back from the defendant the portion of said estate so delivered to her, but neglected and refused to take any steps to recover the same or the value thereof.

St. Sure vs. Lindsfelt.

On March 28, 1888, the plaintiff, as heir at law of said Adolph, filed this bill to compel the defendant to return said property to the said administrator, and other moneys which it is alleged she was owing to said estate. The defendant answers and in effect denies that Elise was the wife of Adolph until her death, March 18, 1886, and claiming said property as the rightful widow of the said Adolph. Upon the trial of the cause the court found several of the facts stated, and particularly the divorce in Sweden, which was held to be a valid divorce, and that the defendant was the lawful widow of said Adolph and as such entitled to the property mentioned, and ordered judgment thereon accordingly. From the judgment entered thereon the plaintiff appeals.

_G. W. Foster_, for the appellant.

For the respondent the cause was submitted on the brief of _A. C. Prescott_. He contended, _inter alia_, that the appellant, having alleged the continuance of the marriage relation between his parents until 1883, must prove that they had never been divorced. _Patterson v. Gaines_, 6 How. 550, 597; Wharton, Evi. secs. 354-6; 1 Greenl. Evi. secs. 78, 81. If either of those parents was the defendant in an action, the court would be warranted in presuming that the marriage relation between them continued, for the reason that if a divorce had been granted they should have known it, and when and where it was granted. But the respondent here has no knowledge of these facts, and the court will presume in her protection that the first marriage had been dissolved. _Williams v. Williams_, 63 Wis. 64, 66, 67; _Blanchard v. Lambert_, 43 Iowa, 228, 22 Am. Rep. 245; _Boulden v. McIntire_, 119 Ind. 574, 12 Am. St. Rep. 453; Bishop, M. & D. secs. 1145, 1148-9.

CASSODAY, J. The record of the divorce granted by the ecclesiastical court in Sweden, February 3, 1864, mentioned in the foregoing statement, appears to be sufficiently au-

St. Sure vs. Lindsfelt.

thenticated to be admissible in evidence under our statute.
R. S. sec. 4139. It is conceded by both parties that the
only question for determination is whether that decree of
divorce is valid and operated as a legal separation of
Adolph and Elise at the time it was rendered.

In this country it is prescribed by constitutional compact
that full faith and credit must be given in each state to the
public acts, records, and judicial proceedings of every other
state; and yet it is well settled that the record of a judg-
ment rendered in another state may be contradicted as to
the facts necessary to give the court jurisdiction, and if
want of jurisdiction appear upon the face of the record, or
is shown either as to the subject matter or the person or,
in proceedings *in rem*, as to the thing, the record will be
regarded as a nullity. *Thompson v. Whitman*, 18 Wall.
457; *Pennoyer v. Neff*, 95 U. S. 714; *Simmons v. Saul*, 138
U. S. 439; *Bartlett v. Knight*, 1 Mass. 401; *S. C.* 2 Am.
Dec. 36; *Starbuck v. Murray*, 5 Wend. 148; *S. C.* 21 Am.
Dec. 172; *Taylor v. Barron*, 30 N. H. 78; *S. C.* 64 Am. Dec.
281; *Rape v. Heaton*, 9 Wis. 328; *S. C.* 76 Am. Dec. 269;
*Renier v. Hurlbut*, 81 Wis. 24. The rule is certainly as
strong, if not stronger, when applied to a judgment ren-
dered in a court of a foreign country, towards which no
such duty is enjoined, and especially where the jurispru-
dence of such foreign country is in no sense based upon
the common law.

Adolph and Elise were married in Sweden in 1835. After
remaining there seven years, they both came, with their
children, to the United States, and for a time resided in
New York, and then came to and continued to reside in
this state during the remainder of their respective lives, as
mentioned in the foregoing statement. The divorce pro-
ceedings were not instituted until eleven years after they
had departed from Sweden and taken up their residence in
the United States. Such proceedings were pending for

eleven years before the decree of divorce was entered. It is true, Elise had returned to Sweden a few months before she filed her petition for such divorce, March 1, 1853; but she came back to Adolph in Wisconsin, and continued to live with him as his wife for five years, and until he went to the war, which was about a year prior to the rendition of the decree of divorce. It is possible, if not probable, that at the time she filed that petition she intended to remain in Sweden and obtain a divorce. Had she so remained there until after that decree, the divorce would perhaps have been regarded as valid by the laws of Sweden. Undoubtedly every country has the power to absolutely fix, regulate, and control the marriage *status* of each and all of its *own citizens;* but no country or state has any power to fix, regulate, or control such *status* as to the citizens of any other country or state. *Cook v. Cook,* 56 Wis. 208; *Roth v. Roth,* 104 Ill. 35; *S. C.* 44 Am. Rep. 81. It logically follows that the Sweden court had no jurisdiction or power to dissolve the marriage relation between Adolph and Elise, twenty-two years after they had both abandoned that country and taken up their residence in this, and six years after Elise had abandoned her temporary visit or residence there and returned to Adolph as his wife. In speaking of the residence in this state essential to give the court jurisdiction, RYAN, C. J., aptly said: "No mere pretense of residence, no passing visit, no temporary presence, no assumption of residence here *pro hac vice* only, nothing short of actual abode here, with intention of permanent residence, will fill the letter or the spirit of the statute." *Dutcher v. Dutcher,* 39 Wis. 658; *Cook v. Cook,* 56 Wis. 206. "The legislature was legislating for the citizens of this state, not for others." *Ibid.* These propositions are still more significant when applied to any statute, law, or custom of any foreign country like Sweden.

Again, the only ground for the divorce stated in the rec-

ord is that Adolph had absconded from the kingdom, and had been, December 11, 1844, by a judgment of a district court, "sentenced as a *cheater,* . . . to stand at the pillory at a public place, for his shame, during two hours, and then to suffer penal servitude for five years in any of the fortresses of the realm." This presupposes such conviction and sentence without notice or hearing two years after Adolph and his wife and family had left Sweden and become permanent residents of the United States. No statute, law, or custom has been alleged or proved authorizing a divorce on such a conviction and sentence procured in such a way; and the courts of this state are not authorized to presume the existence of any so repugnant to our own laws. *Walsh v. Dart,* 12 Wis. 635; *Kellam v. Toms,* 38 Wis. 592; *Osborn v. Blackburn,* 78 Wis. 209; 1 Greenl. Ev. §§ 5, 43, 486, and notes. Presumptions as to foreign laws are generally confined to those states and countries in which the common law is the law of the land, as in the several states of this country and Great Britain; and even then they do not extend to such statutory enactments as are penal in their nature. *Hull v. Augustine,* 23 Wis. 383; *Murphy v. Collins,* 121 Mass. 6; *Cutler v. Wright,* 22 N. Y. 472; *Leonard v. Columbia S. N. Co.* 84 N. Y. 48; *Smith v. Whitaker,* 23 Ill. 367; *Gunn v. Howell,* 27 Ala. 663; *S. C.* 62 Am. Dec. 785; 1 Greenl. Ev. § 43, and note.

Besides, in the record of the divorce in question it does not appear that any notice was ever served or attempted to be served on Adolph by publication or otherwise, notwithstanding he had been outside of the jurisdiction of the realm for many years; nor is there anything in that record showing or tending to show any appearance by him or in his behalf therein; nor are there any facts recited or mentioned therein which, according to our laws, could give jurisdiction.

For the reasons stated, we must hold that the divorce

was a nullity. This being so, it is manifest that Elise continued to be the wife of Adolph until her death, March 18, 1886. It necessarily follows that the marriage of the defendant, *Olive*, to Adolph, August 30, 1883, was an absolute nullity, and gave her no rights whatever as his widow. *Williams v. Williams*, 63 Wis. 58, and cases there cited.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.