KITZMAN, Respondent, vs. WERNER, as guardian, imp., Appellant.

*February 5—April 30, 1918.*

*Marriage: Divorce: Effect of final judgment: Right to remarry: Validity of marriage: Epileptics: Public policy: Voidable marriage in another state: Action to affirm: Annulment.*

1. Where an interlocutory decree of divorce was properly entered under ch. 323, Laws 1909, the final judgment was properly entered under the regulations of and with the effect provided for in said law of 1909, even though not applied for until after the enactment of ch. 239, Laws 1911 (which provides that the judgment entered in a divorce action, so far as it affects the status of the parties, does not become effective until the expiration of one year from the date of entry). A final judgment of divorce, therefore, entered in 1915, based upon an interlocutory decree properly entered in 1909, left the parties free to marry again without waiting a year.

2. Under sec. 7090, Gen. Stats. Minn. 1913, construed in connection with secs. 7095 and 7106, a marriage contracted by a person who is an epileptic is voidable only, and valid until dissolved by judicial decree.

3. Although a marriage valid where contracted is valid everywhere, it has when properly challenged in a sister state no more immunity from attack than it would have had if the parties, instead of returning to such sister state, had gone on living in the state to which they went to have the ceremony performed and the action had been instituted there.

4. The public policy of Minnesota in prohibiting an epileptic from contracting a lawful marriage cannot be held to have been contrary to the public policy of this state in 1915, since in this state the marriage of insane persons and idiots was then prohibited and, although there is a distinction between epilepsy and insanity, the courts may take judicial notice that epilepsy is a serious mental disease and tends to weaken the power of the afflicted person and to injure his posterity; and especially since, by ch. 218, Laws 1917, the prohibition in this state against marriage has been extended so as to apply to epileptics.

5. The state has the right to control and regulate by reasonable laws the marriage relationship of its citizens, and the wishes and desires or even immediate welfare of the individual must yield to the public welfare as determined by the public policy of the state. Hence, in an action properly involving the question of the validity of a marriage, the duty of the court in deciding that question is not altered by the expressed wishes of the parties.

6. In an action under sec. 2352, Stats., to have a marriage declared valid, where the evidence showed that such marriage was voidable in the state where it was contracted and was not entitled to be recognized as valid under the public policy of this state, the court should have proceeded to annul and declare void such marriage, even though there was no counterclaim, and no desire on defendant's part, to have it annulled.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge. *Reversed.*

The appeal is from a judgment affirming plaintiff's marriage to defendant Otto H. Kitzman.

On September 20, 1909, the plaintiff, then *Bertha G. Hanson,* obtained an interlocutory decree of divorce in an

action in the circuit court for Eau Claire county against her then husband, Harry Hanson.

March 26, 1914, proceedings were commenced in the county court of Eau Claire county for the appointment of a guardian for the defendant herein, Otto H. Kitzman, on the ground of his excessive drinking, and a copy of such petition and the order made thereon were properly filed with the register of deeds of said county on the following day. April 21, 1914, *Frank Werner,* defendant and appellant herein, was appointed guardian of said Otto H. Kitzman in such proceedings and has remained such ever since. In September, 1914, the plaintiff and the defendant Otto H. Kitzman made application to the county clerk of Eau Claire county for a marriage license, but were refused such. July 30, 1915, the plaintiff filed a petition in the divorce action between herself and Harry Hanson praying that a final judgment may be rendered in that court pursuant to ch. 323 (*sic*) of the Laws of 1911, and for such other and further order, judgment, and relief as to the court may seem necessary and proper in connection therewith, and on the same day a final judgment was rendered in said action reciting that more than one year had elapsed since the rendition and filing of the interlocutory decree mentioned above and adjudging that the bonds of matrimony theretofore existing between the parties be and the same were thereby wholly dissolved. August 13, 1915, another application was made to the county clerk of Eau Claire county for a marriage license and it was again refused. On September 27th of the same year the plaintiff and defendant Kitzman went to the city of St. Paul, Minnesota, and there obtained a license to marry, and before a justice of the peace in the state of Minnesota had a marriage ceremony performed and received a marriage certificate from such justice in the proper form. They returned to Eau Claire on the same day and have lived together as husband and wife since October 11th on the farm owned by defendant Otto.

In May, 1916, *Bertha G. Kitzman* as plaintiff commenced this action against the defendants asking that proceedings then pending on an application made by defendant *Frank Werner* for the commitment of defendant Otto H. Kitzman to the county insane asylum be stayed and that the said marriage ceremony of September 27, 1915, be declared a valid marriage.

The defendant *Frank Werner,* as guardian of the said Otto H. Kitzman, interposed an answer in substance denying that there was a lawful marriage between the plaintiff and defendant Kitzman, and by way of counterclaim that by reason of prohibitions contained in the laws of the state of Wisconsin both the plaintiff and the defendant Otto H. Kitzman were prohibited and incapacitated from entering into the marriage relationship, and further that by reason of certain statutes of the state of Minnesota in force September, 1915, the alleged marriage between them was prohibited and void, and praying that the complaint be dismissed on the merits and that judgment be entered declaring the alleged marriage of September 27, 1915, to be null and void.

The ages of the plaintiff and defendant at the time of trial appeared to be about fifty and fifty-nine years respectively. Defendant Kitzman possessed property worth between $7,000 and $10,000, and plaintiff has been dependent upon her own labor for support.

Upon the trial of the action the court made findings establishing as facts the records and proceedings that have been recited above, and that during the period of ten years preceding such trial "the defendant Otto H. Kitzman has been subject to occasional attacks of epilepsy which rendered him insensible at the time of such attacks and somewhat irrational for some hours thereafter; that said epileptic condition was caused by the excessive use of alcohol; that at the time of the trial he was entirely rational and exhibited no mental abnormality except that his memory on certain subjects on which his mind had not been recently refreshed was

quite defective; that at the time of his marriage to the plaintiff he fully understood the nature of the transaction and was not then and is not now insane;" and found as conclusions of law that there was no prohibition, either under the laws of the state of Wisconsin or the laws of Minnesota, to the marriage of September, 1915, and that such marriage was valid.    From the judgment entered in accordance with such findings the defendant *Frank Werner,* as guardian, has appealed.

*Fred Arnold* of Eau Claire, for the appellant.

*A. C. Larson* of Eau Claire, for the respondent.

The following opinion was filed March 5, 1918:

Eschweiler, J.    The plaintiff contends that having obtained an interlocutory decree of divorce from her then husband, Harry Hanson, September 20, 1909, under the statutes as amended by the laws of that year, her status as it related to her right to again marry became thereby fixed and determined, so that the two conditions required under that law, viz. of the elapsing of one year from the entry of the interlocutory decree and the entry of final decree in July, 1915, being complied with, left her then forthwith free to remarry, even though in the interim between such interlocutory and final decrees the law had been amended by ch. 239 of the Laws of 1911.

The appellant guardian contends that by sec. 2330, Stats., as it stood in September, 1915, and then reading, so far as material here, as follows: "Section 2330. 1. No marriage shall be contracted while either of the parties has a husband or wife living, . . . and no insane person or idiot shall be capable of contracting marriage," in connection with then existing sec. 2374, providing that the judgment entered in a divorce action, so far as it affects the status of the parties, does not become effective until the expiration of one year from the date of the entry of such judgment, placed a pro-

hibition upon any marriage by plaintiff until the specified one year had elapsed from and after the entry of the judgment of July, 1915.

The substantial changes wrought in the laws of this state regulating marriage and divorce by the amendments here involved and created by ch. 323, Laws 1909, and ch. 239, Laws 1911, were so fully pointed out and discussed in the case of *Dallmann v. Dallmann,* 159 Wis. 480, 149 N. W. 137, that we deem it unnecessary to go over the same subject again. The effect of the decision in that case was to hold, and we do now hold, that an interlocutory decree of divorce, properly entered under the provisions of ch. 323 of the Laws of 1909, so fixed the status of the parties to the same as to their right to again marry that after the expiration of one year from the entry of such interlocutory decree and upon the entry of such a final decree as is provided for in said ch. 323, the prohibition against again marrying is forthwith lifted, even though such final judgment is not obtained until after ch. 239, Laws 1911, had been enacted. In other words, that when an interlocutory decree was properly entered under the provisions of ch. 323, Laws 1909, the final and terminating adjudication in such divorce action can and should be made under the regulations of and with the effect provided for in that ch. 323, Laws 1909, even though such final judgment be not applied for until after ch. 239, Laws 1911, went into effect.

This means that the trial court was right in holding that plaintiff was not in September, 1915, the wife of Harry Hanson and therefore was not within the prohibition of sec. 2330, Stats.

Sec. 7090, Gen. Stats. Minn. 1913 (formerly sec. 3554), and in force in September, 1915, read as follows:

*"Marriages prohibited.* No marriage shall be contracted while either of the parties has a husband or wife living; nor within six months after either has been divorced from a

former spouse; nor between parties who are nearer of kin than second cousins, whether of the half or whole blood, computed by the rules of the civil law; nor between persons either one of whom is epileptic, imbecile, feeble-minded or insane."

By ch. 234 of the Laws of Minnesota for the year 1901 this express prohibition against marriage being contracted by epileptics or insane persons was first incorporated into its laws and such express prohibition has ever since then been the public policy of that state.

In Minnesota a license is a prerequisite for a marriage ceremony. Such a license in due form was obtained in this case, is in the record here, and it certifies that the clerk of the district court, the official authorized to issue it under sec. 7095, Gen. Stats. Minn. 1913, was satisfied by the oath of the defendant Kitzman that there were no legal impediments to such proposed marriage.

Defendant Kitzman was at that time an epileptic and had suffered an unmistakably characteristic epileptic fit two days before the ceremony. If those facts had been communicated to the clerk issuing such certificate it would have been his duty to have refused such license; or if to the justice of the peace, his duty would have been to refuse to act, because such proposed ceremony would have been clearly within the prohibition of the Minnesota statute quoted above, sec. 7090, and contrary to the public policy of that state.

By sec. 7106, Gen. Stats. Minn. 1913, it was provided that marriages prohibited by law on account of consanguinity, or on account of either party having a former husband or wife then living, if solemnized within that state, shall be absolutely void without any legal proceedings. Marriages attempted to be contracted contrary to other statutory prohibitions than those two so specified are voidable only, and valid until dissolved by judicial decree. *State v. Yoder,* 113 Minn. 503, 130 N. W. 10. The marriage ceremony,

therefore, in September, 1915, to which defendant Otto H. Kitzman was a party must be considered under the laws of the state of Minnesota, where it was performed, as voidable merely and not void.

The general proposition that a marriage valid where contracted is valid everywhere (*Hall v. Industrial Comm.* 165 Wis. 364, 162 N. W. 312) carries with it as a necessary corollary the further proposition that such marriage comes into a sister jurisdiction with all its inherent infirmities as well as strength. It can acquire no greater sanctity or impregnability by such removal than it had where solemnized. When properly challenged here it can have acquired, by reason of the parties returning to this state to live, no more immunity from attack than it would have had if they, from the time of the ceremony and thereafter, had lived in Minnesota and the action was there instituted.

This marriage in Minnesota was solemnized contrary to the express prohibition of the statutes of that state and contrary to its public policy. It was solemnized there after a fraud upon the clerk of the district court, in his duty to ascertain and to be satisfied that there was no legal impediment to such marriage, had been perpetrated, either by the concealment by or false statement of the defendant Kitzman as to his condition on a material and statutory requirement.

It could not properly be held that the public policy of Minnesota, in prohibiting an epileptic from contracting a lawful marriage, was contrary or repugnant to the then public policy of this state, inasmuch as this state then prohibited the marriage of insane persons and idiots; for although there is a distinction both in the legal and medical sciences between epilepsy and insanity (*Oborn v. State,* 143 Wis. 249, 276, 126 N. W. 737), yet the court may properly take judicial notice that epilepsy is a serious mental disease and tends to weaken the power of the afflicted person and to injure his posterity. *Gould v. Gould,* 78 Conn. 242, 61 Atl.

604, 2 L. R. A. N. s. 531.   We should be loath to declare, if
not indeed prevented from declaring, that such a prohibition
by Minnesota was contrary to the public policy of this state,
in view of the fact that by ch. 218, Laws 1917, the legisla-
ture amended that portion of sec. 2330, Stats., above quoted,
by inserting the word "epileptic" between the words "person"
and "or" in the last sentence thereof.

The marriage ceremony, therefore, which plaintiff has
asked the courts of this state to confirm in this action was,
when performed, contrary to the public policy of the state
resorted to by the plaintiff for the sole purpose of perform-
ing the ceremony, and we shall give it no higher value here
than it had there.

The mere fact that the unfortunate defendant Otto H.
Kitzman, when examined as a witness in the court below,
expressed himself as opposed to the action taken by his guard-
ian and indicated his desire of having such ceremony con-
firmed and the relationship continued, does not alter the sit-
uation nor change the duty of the court in disposing of the
case.

The state has the right to control and regulate by reason-
able laws the marriage relationship of its citizens, and the
wishes and desires, or even immediate welfare, of the indi-
vidual must yield to the public welfare as determined by the
public policy of the state.   *Andrews v. Andrews,* 188 U. S.
14, 30, 23 Sup. Ct. 237; *Peterson v. Widule,* 157 Wis. 641,
147 N. W. 966; *Maynard v. Hill,* 125 U. S. 190, 8 Sup. Ct.
723.

The plaintiff brought this action in evident reliance upon
sec. 2352, Stats., reading as follows:

"When the validity of any marriage shall be denied or
doubted by either of the parties the other party may com-
mence an action to affirm the marriage, and the judgment in
such action shall declare such marriage valid or annul the
same, and be conclusive upon all persons concerned."

The plaintiff having herself come and having brought the

defendant Kitzman into court under this statute, it follows that when, as here, the facts do not warrant the court in declaring such an alleged marriage a valid marriage, it must proceed further and not merely, as in ordinary cases, dismiss the plaintiff out of court, but must declare such pretended, denied, or doubted marriage void and annulled.   There is no half way recognized.   It is therefore immaterial whether there is a counterclaim interposed praying for such annulment as against plaintiff's prayer for affirmance or that the defendant should in any way move the court to act.   On such questions the state itself is interested in seeing, on its own behalf, that the status of those who claim to be married shall be definitely determined so that there shall not be within its borders, with its knowledge and sanction, those who are dwelling within a matrimonial twilight zone.

It follows from what has been said that the trial court should have declared that the marriage ceremony of September 27, 1915, between the plaintiff and defendant Otto H. Kitzman was against the prohibition of the Minnesota statute; was contrary to the public policy of that state; was entered into after concealment or misrepresentation of a material fact had induced the proper official of that state to issue a requisite marriage certificate; and that such violations of the public policy and statutes of Minnesota were of such nature that the pretended ceremony could create no matrimonial status entitled to be recognized as such within the public policy of this state, and such attempted marriage, therefore, should have been declared null and void.

This disposition of the case renders it unnecessary to discuss or consider other questions presented on this appeal.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with instructions to that court to enter judgment declaring the marriage ceremony between the plaintiff and the defendant Otto H. Kitzman null and void; the defendant *Frank Werner,* as guardian,

to have his costs and disbursements in this court and in the court below.

A motion for a rehearing was denied, without costs, except clerk's fees, on April 30, 1918.