LYANNES, by guardian *ad litem,* Respondent, vs. LYANNES,
Appellant.

*April 7—May 4, 1920.*

*Marriage: Action for annulment: Jurisdiction of court: Presump-*
    *tion of validity of marriage: Marriage license law: Eugenic*
    *law: Extraterritorial effect: Fraud in inducing marriage:*
    *Misrepresentations as to age: Evasion of state law: Con-*
    *summation of marriage: Marriage of residents of Wisconsin*
    *in other states.*

1. Under secs. 2351 *et seq.,* Stats. 1919, an action for the annul-
    ment of a marriage, jurisdiction of which is by sec. 2348
    given the circuit court, is the proper remedy for setting aside
    either a void or a voidable marriage.
2. Jurisdiction and power to annul a marriage, like that to divorce
    the parties, is exclusively of statutory creation, and cannot
    be extended under the general equitable powers of the court.
3. The presumption in favor of the validity of a marriage over-
    rides the presumption of evidence that the laws of a sister
    state are the same as those of the forum, and in the absence
    of any allegation in the complaint to the contrary it will be
    deemed, on the consideration of a demurrer, that the parties
    to the marriage were not disabled or prohibited.from marry-
    ing at the place where the ceremony was performed.

4. Neither the marriage license law (secs. 2339n—1 to 2339n—27, Stats.) applicable to marriages solemnized in Wisconsin, nor sec. 2339m, providing for an ante-nuptial physical examination of those who are applicants for a license to marry within the state, has extraterritorial effect.

5. Neither representation by the man that he is two years older than he is in fact, nor inducing a marriage in evasion of the state law, in another state, nor both, is or are of such substantial nature as to warrant annulment of the marriage for fraud.

6. An allegation of the complaint that plaintiff left defendant on the day after their marriage "and has never since cohabited with him," in effect admits cohabitation prior to leaving and constitutes a consummation of the marriage within sub. (4), sec. 2351.

7. Sec. 2330m, Stats., so far as it relates to marriage in another state of residents of this state, renders null and void such marriage only where the parties are disabled or prohibited, under the laws of this state, from marrying under any circumstances; that is, such a marriage as is prohibited by sec. 2330.

APPEAL from an order of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Reversed.*

The trial court overruled the defendant's general demurrer which alleged that plaintiff's complaint failed to state a cause of action. The complaint alleged substantially as follows:

The due appointment of a guardian *ad litem* for plaintiff.

That at Bessemer, Michigan, on June 14, 1919, there was a form of marriage between the parties, both at that time being, intending to continue to be, and since are residents of the state of Wisconsin.

. That defendant falsely represented to plaintiff that he was at that time twenty-one years of age, but that the marriage was legal in Michigan without complying with the laws of Wisconsin.

That in applying for a license in Michigan for such marriage he falsely stated that both of the parties were over twenty-one.

That in fact the defendant's real age was eighteen and

the plaintiff's twenty, and that the parents of neither gave their consent to a marriage.

That defendant failed to submit to a physical examination for the purpose of determining whether or not he was afflicted with a venereal disease, pursuant to sec. 2339m, Stats.

That defendant failed to secure the consent of his parents to such marriage under sec. 2339n—5, Stats.

That defendant, while prohibited in the state of Wisconsin from entering into such marriage, went to Michigan and there contracted a marriage prohibited in this state.

That plaintiff was induced to consent to such form of marriage because of her belief in the representations of defendant above stated, by her ignorance of his misstatements in his application for a license, and by her ignorance of the requirements for a legal marriage under the laws of the state of Wisconsin, and that otherwise she never would have consented to the said marriage.

That defendant fraudulently contracted said marriage in Michigan for the purpose of evading the laws of Wisconsin.

That immediately upon her discovery of the falsity of the representations aforesaid and the evasion of the Wisconsin law and on June 15, 1919 (being the day subsequent to said marriage), she left defendant and has never since cohabited with him.

Plaintiff prays that the marriage be annulled and declared void as provided by statute. From the order overruling the demurrer defendant appeals.

The material parts of several of the statutes considered on this appeal other than those set out at length in the opinion are here inserted:

## MARRIAGE.

### Chapter 107, Stats. 1919.

"*Who shall not marry; divorced persons.* Section 2330. 1. No marriage shall be contracted while either of the

parties has a husband or wife living, nor between persons who are nearer of kin than second cousins, excepting that marriage may be contracted between first cousins where the female has attained the age of fifty years. Relationship under this section shall be computed by the rule of the civil law, whether the parties to the marriage are of the half or of the whole blood. No insane person, epileptic or idiot shall be capable of contracting marriage.

"2. It shall not be lawful for any person, who is a party to an action for divorce from the bonds of matrimony, in any court in this state, to marry again until one year after judgment of divorce is entered, and the marriage of any such person solemnized before the expiration of one year from the date of the entry of judgment of divorce shall be null and void."

## MARRIAGE EVASION LAW.

"*Marriage abroad to circumvent the laws.* Section 2330m. 1. (Set out in full in decision.)

## EUGENIC MARRIAGE LAW.

"*Ante-nuptial physical examination.* Section 2339m. 1. All male persons making application for license to marry shall at any time within fifteen days prior to such application, be examined as to the existence or nonexistence in such person of any venereal disease, and it shall be unlawful for the county clerk of any county to issue a license to marry to any person who fails to present and file with such county clerk a certificate setting forth that such person is free from venereal diseases so nearly as can be determined by a thorough examination and by the application of the recognized clinical and laboratory tests of scientific search, when in the discretion of the examining physician such clinical and laboratory tests are necessary."

(Then follow provisions for microscopical examination and the Wasserman test.)

"Such certificate shall be made by a physician, licensed to practice in this state or in the state in which such male person resides; shall be filed with the application for license to marry" (and then follows form of certificate).

"2. Such examiners shall be physicians duly licensed to practice in this state, or in the state in which such male person resides."

(Then follows provision for the fee and for the examination by county or asylum physician if applicant be indigent.)

"3. Any county clerk who shall unlawfully issue a license to marry to any person who fails to present and file the certificate provided by subsection 1 of this section, or any party or parties having knowledge of any matter relating or pertaining to the examination of any applicant for license to marry, who shall disclose the same, or any portion thereof, except as may be required by law, shall upon proof thereof be punished by a fine of not more than one hundred dollars or by imprisonment not more than six months.

"4. Any physician who shall knowingly and wilfully make any false statement in the certificate provided for in subsection 1 of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment not more than six months."

*Marriage of person having had venereal disease.* Section 2339n. 1. No person who has ever been afflicted with gonorrhea or syphillis shall be granted a marriage license in this state until such person shall furnish to the county clerk issuing the license a certificate . . ."

(Then follow provisions as to the persons who shall issue and the manner and form of such certificate.)

"4. Any person who shall obtain any such license contrary to the provisions of this section shall, upon conviction thereof, be punished by a fine of not less than one hundred dollars or by imprisonment in the county jail for not less than three months, or by both such fine and imprisonment."

### MARRIAGE LICENSES.

*Marriage contract; how made.* Section 2339n—1. Marriage may be validly contracted in this state only after a license has been issued therefor, in the manner following: . . ."

*Consent of parent or guardian.* Section 2339n—5. No license shall be issued if either of the contracting parties be under the marriageable age of consent as established by law. If either of the contracting parties be between the age of eighteen years and twenty-one years if a male, and between the age of fifteen years and eighteen years if a female, no license shall be issued without the consent of his or her parents or guardian, or of the parent having the actual care,

custody and control of said party or parties, given before the county clerk under oath, or certified under the hand of such parents or guardian as aforesaid, and properly verified by affidavit before a notary public or other official authorized by law to take affidavits, which certificate shall be filed of record in the office of said county clerk and entered by him on the marriage license docket before issuing said license; provided, that if there be no guardian or parent having the actual care, custody and control of said party or parties, then the judge of the court having probate jurisdiction in the county where the application is pending may, after hearing, upon proper cause shown, make an order allowing the marriage of said party or parties."

## DIVORCE.

### *Chapter 109, Stats. 1919.*

"*Jurisdiction.* Section 2348. The circuit court has jurisdiction of all actions to affirm or to annul a marriage, or for a divorce from the bond of matrimony; or from bed and board, and authority to do all acts and things necessary and proper in such actions and to carry its orders and judgments into execution as hereinafter prescribed. All such actions shall be commenced and conducted and the orders and judgments therein enforced according to the provisions of these statutes in respect to actions in courts of record, as far as applicable, except as provided in this chapter."

"*Marriages; annulment; causes for.* Section 2351. A marriage may be annulled for any of the following causes existing at the time of marriage:

"*Impotency, etc.* (1) Incurable physical impotency or incapacity of copulation, at the suit of either party, provided that the party making the application was ignorant of such impotency or incapacity at the time of marriage.

"*Consanguinity, etc.* (2) Consanguinity or affinity where the parties are nearer of kin than the second cousins, computing by the rule of civil law, whether of the half or of the whole blood, at the suit of either party; but when any such marriage shall not have been annulled during the lifetime of the parties, the validity thereof shall not be inquired into after the death of either party.

"*Former marriage.* (3) When such marriage was con-

tracted while either of the parties thereto had a husband or wife living, at the suit of either party.

"*Fraud, etc.*   (4) Fraud, force, or coercion, at the suit of the innocent and injured party, unless the marriage has been confirmed by the acts of the injured party.

"*Insanity.*   (5) Insanity, idiocy, or such want of understanding as renders either party incapable of assenting to marriage, at the suit of the other, or at the suit of a guardian of the lunatic or incompetent, or of the lunatic or incompetent on regaining reason, unless such lunatic or incompetent, after regaining reason, has confirmed the marriage; provided that where the party *compos mentis* is the applicant, such party shall have been ignorant of the other's insanity or mental incompetency at the time of the marriage, and shall not have confirmed it subsequent to such person's regaining reason.

"*Nonage of wife.*   (6) At the suit of the wife when she was under the age of fifteen years at the time of the marriage, unless such marriage be confirmed by her after arriving at such age.

"*Nonage of husband.*   (7) At the suit of the husband when he was under the age of eighteen at the time of the marriage, unless such marriage be confirmed by him after arriving at such age."

For the appellant the cause was submitted on a brief signed by *A. J. O'Melia* of Rhinelander.

*Charles F. Smith* of Rhinelander, for the respondent.

On behalf of the State there was a brief by the *Attorney General* and *M. B. Olbrich,* deputy attorney general, as *amici curiæ,* and oral argument by *Mr. Olbrich.*

A brief was also filed as *amici curiæ* by *Eugene A. Gilmore, John B. Sanborn,* and *Julius E. Roehr,* Wisconsin commissioners on uniform state laws, and oral argument by *Mr. Sanborn.*

ESCHWEILER, J.  Sec. 2330m, Stats., reads as follows:

"*Marriage abroad to circumvent the laws.* Section 2330m. 1. If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting

marriage under the laws of this state shall go into another state or country and there contract a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state.

"2. No marriage shall be contracted in this state by a party residing and intending to continue to reside in another state or jurisdiction, if such marriage would be void if contracted in such other state or jurisdiction and every marriage celebrated in this state in violation of this provision shall be null and void."

The effect to be given to sub. 1 of that statute will determine two important questions presented on this appeal as to whether it is within the jurisdiction of and a proper exercise of the power of a circuit court of this state to annul and declare as void *ab initio* a marriage by residents of this state who intend to continue to be such residents, when solemnized without this state under the following situations:

*First.* Where there was a failure to observe the provisions of the marriage license law of this state embodied in sec. 2339n—1 to sec. 2339n—27, Stats., inclusive, and that because

(a) No license, prior to the ceremony, was obtained under sec. 2339n—1, *supra;* or because

(b) The consent of parent or guardian, required for a license here, was not first obtained under sec. 2339n—5, *supra.*

*Second.* Where the male failed to have the ante-nuptial physical examination for the determining of the existence or nonexistence of venereal disease as provided in the so-called eugenic marriage law, sec. 2339m, *supra.*

These two questions may be stated in another form as requiring us to determine whether either or both the eugenic marriage law, sec. 2339m, *supra,* and the marriage license law, sec. 2339n—1 to sec. 2339n—27, inclusive, is or are extraterritorial in effect.

Any attempted solution of these questions necessarily involves a consideration of the public policy of this state as declared by statute and judicial decisions.

The proper mating of the male and female of the human race as the foundation of the family, and thereby of the general well-being of the community at large, has been deemed of such paramount importance that the state has constantly assumed a wide control over the relationship of husband and wife of those residing within its borders.

From the beginning of our state government it has been declared as part of its public policy that marriage, so far as its validity in law is concerned, is a civil contract to which the consent of parties capable in law of contracting is essential. Sec. 2328. The age at which the male and female respectively must arrive before they were considered at common law to be of sufficient capacity to enter into such a contract was fourteen and twelve years respectively, but that has been, during the entire history of this state, raised to the years of eighteen and fifteen respectively. Sec. 2329; *Eliot v. Eliot,* 77 Wis. 634, 640, 46 N. W. 806.

The same public policy has consistently and continuously recognized substantially three different classes as to those who claim to have, or of whom it is claimed they have, entered into the relationship of husband and wife:

*First.* Those who, competent to so contract, have complied with the statutory requirements and thereby made a valid marriage.

*Second.* Those who, by reason of some positive inhibition of the law, are absolutely disabled and prohibited from sustaining to each other the lawful relationship of husband and wife and whose attempt so to sustain to each other such legal relationship is denominated, from want perhaps of a more logical description, a void marriage.

*Third.* Parties to a marriage denominated voidable, which, although improper, illegal, or irregular in its inception, may by the removal of the impediments then existing

or by subsequent cohabitation or recognition of the relationship become valid.

In the void marriage the relationship of the parties, so far as its being legal is concerned, is an absolute nullity from its very beginning and cannot be ratified. It may be questioned at any time during the life of both, and, with some statutory exceptions (*vide* sub. (2), sec. 2351, Stats.), after the death of either or both, and generally whether the question arises directly or collaterally. As between the two individuals concerned no rights spring therefrom, and, generally speaking, except as modified by positive legislation, it needs no adjudication by a court that it is void. That such is the law of this state has been repeatedly held. *Williams v. Williams,* 63 Wis. 58, 68, 23 N. W. 110; *St. Sure v. Lindsfelt,* 82 Wis. 346, 352, 52 N. W. 308; *Zahorka v. Geith,* 129 Wis. 498, 505, 109 N. W. 552; *Lanham v. Lanham,* 136 Wis. 360, 368, 117 N. W. 787.

It is so regarded elsewhere. 18 Ruling Case Law, 440; Bishop, Mar., Div. & Sep. p. 107, § 258; Schouler, Dom. Rel. p. 25, § 14; Stewart, Mar. & Div. § 50; Nelson, Div. & Sep. p. 533, § 568; L. R. A. 1916C, note p. 691; *Wiley v. Wiley* (Ind.) 123 N. E. 252, and cases cited.

The void marriage, strictly speaking, is one where the relationship between the parties is necessarily incestuous, as between parent and child and brother and sister, and invariably, where monogamy is the law of the land, when either has a spouse living from whom he or she is not then legally divorced. The latter class includes those as between whom a judgment of divorce has already been entered, but by the public policy of the jurisdiction in which the divorce is granted are prohibited from another marriage within a statutory period after such judgment, and as to whom, in effect, the matrimonial knot is not yet completely severed by the sword of divorce. This covers the situation of those in this state under sub. 1, sec. 2374, Stats., and has been so construed by this court. *Lanham v. Lanham,* 136 Wis. 360,

368, 117 N. W. 787; *Armstrong v. Industrial Comm.* 161 Wis. 530, 154 N. W. 844; *Hall v. Industrial Comm.* 165 Wis. 364, 368, 162 N. W. 312.

As to parties to a void marriage, the question of compliance or noncompliance with any statutory provisions such as for ante-nuptial physical examination or the prerequisite of marriage license, are entirely irrelevant. As to them, the obtaining of a marriage license, the consent of their parents if they be minors, or subsequent cohabitation as though lawfully married, are all of no avail and neither help nor change their situation in that regard.

The voidable marriage, on the other hand, may subsequently ripen into an absolute marriage, and is considered valid and subsisting until annulled by judgment of a court of competent jurisdiction. *Eliot v. Eliot,* 77 Wis. 634, 641, 46 N. W. 806; *State v. Cone,* 86 Wis. 498, 57 N. W. 50; *Kitzman v. Werner,* 167 Wis. 308, 314, 166 N. W. 789; *Estate of Jansa,* 169 Wis. 220, 171 N. W. 947; *State v. Yoder,* 113 Minn. 503, 103 N. W. 10, L. R. A. 1916C, 686, and note at p. 691; *Behsman v. Behsman* (Minn.) 174 N. W. 611.

Between the absolutely void marriages and the voidable marriages, the distinction is often shadowy and the line hard to place. Both forms are intermingled in the provisions of sec. 2330, *supra,* providing who shall not marry. Also in the provisions of sec. 2351, *supra,* which gives the causes for which marriages may be annulled. *Becker v. Becker,* 153 Wis. 226, 228, 140 N. W. 1082.

Prior to ch. 323, Laws 1909, which repealed certain statutes between secs. 2349 to 2360 inclusive as then found, and which chapter enacted and amended certain sections which are now found in ch. 109 on the subject of divorce, certain of such void marriages, namely, those on account of consanguinity between the parties, or on account of either of them having a former husband or wife then living, were by the then sec. 2349 (as found in the revision of

1898) declared to be absolutely void without any judgment of divorce or other legal proceeding, although by then existing sec. 2351 an annulment action might nevertheless be maintained. Since such ch. 323, Laws 1909, however, and by the law as it now stands in sec. 2351 *et seq.,* the action for annulment is the proper remedy to set aside both the void and the voidable marriage. The jurisdiction, and therefore the power, to so decree annulment of both such is conferred on the circuit court by sec. 2348, *supra.*

Although the question perhaps is not squarely presented on this appeal, yet as it is inferentially at least before us in determining the extent of the power and jurisdiction of the circuit court to grant relief to plaintiff in any phase of the situation that may be disclosed by the complaint, we deem it proper to say that we can see no valid reason for holding otherwise than that the jurisdiction and power to annul is exactly the same as to divorce and that both are exclusively of statutory creation and neither rest upon nor can be extended by resort to the general equitable powers inherent in the circuit court as a court of equity.

It has been so held as to divorce. *Barker v. Dayton,* 28 Wis. 367, 379, and in the recent case of *Towns v. Towns,* ante, p. 32, 176 N. W. 216, and the long line of intermediate cases.

The ruling now made is but a recognition of evident legislative intent from the statutory grouping of the two subjects of divorce and annulment.

It is so held elsewhere (*Walter v. Walter,* 217 N. Y. 439, 111 N. E. 108), although there are authorities to the contrary, such as *Christlieb v. Christlieb* (Ind.) 125 N. E. 486; *Wimbrough v. Wimbrough,* 125 Md. 619, 94 Atl. 168; *Davis v. Davis* (N. J.) 106 Atl. 644; *Wiley v. Wiley* (Ind.) 123 N. E. 252; *Bolmer v. Edsall* (N. J.) 106 Atl. 646; *Hunt v. Hunt,* 23 Okla. 490, 100 Pac. 541, 22 L. R. A. N. S. 1202; 26 Cyc. 908; 9 Ruling Case Law, 267.

In determining the question whether the circuit court has

statutory power to annul this particular marriage solemnized in Michigan, we are bound to assume, in the absence of any allegations to the contrary, that it was not void there and that the parties were not disabled or prohibited from marrying in that state. *Lanctot v. State,* 98 Wis. 136, 138, 73 N. W. 575; *Bolmer v. Edsall* (N. J.) 106 Atl. 646, 652; *Schaffer v. Richardson,* 125 Md. 88, 93 Atl. 391, L. R. A. 1915E, 186 and note; 26 Cyc. 877. The presumption in favor of the validity of such a contract should override the presumptions of evidence in ordinary contract cases that the laws of a sister state, the pleadings being silent, are the same as those of the forum. And moreover, the latter rule does not apply as to laws containing penal provisions, as some at least of those here involved do. *Hull v. Augustine,* 23 Wis. 383; *St. Sure v. Lindsfelt,* 82 Wis. 346, 351, 52. N. W. 308; *Schoenberg v. Adler,* 105 Wis. 645, 81 N. W. 1055.

It appears from the complaint that defendant failed to do that which, under the marriage license law of this state, sec. 2339n—1 to sec. 2339n—27, Stats., he would be required to before solemnizing his marriage in this state, viz. (1) the procuring of a license pursuant to sec. 2339n—1, which says: "Marriage may be validly contracted in this state only after a license has been issued therefor;" . . . (2) there was of course no five days' interval between an application for such license and the issuing thereof (sec. 2339n—3); (3) he did not obtain the consent of his parents, he being between the age of eighteen and twenty-one years (sec. 2339n—5); (4) he obtained no certificate as to an ante-nuptial physical examination (sec. 2339m). (But this question is discussed later.)

It is argued in substance that, failing the foregoing, his marriage could not be valid, and not being valid it must necessarily be invalid, and that particularly by reason of the language of sec. 2339n—21, as follows:

"All marriages hereafter contracted in violation of any

of the requirements of section $2339n$—1 shall be null and void (except as provided in sections $2339n$—22 and $2339n$—23); provided, that the parties to any such void marriage may, at any time, validate such marriage by complying with the requirements of sections $2339n$—1 to $2339n$—27, inclusive."

That the Michigan ceremony as though likewise performed here was necessarily "null and void," and therefore he was thereby "disabled or prohibited" from making a legal marriage here or elsewhere. That he was therefore squarely within the terms and the letter of the marriage evasion law (sec. $2330m$), quoted at the beginning of this opinion.

The language of many of these provisions, and particularly the first appearing in the marriage license law as sec. $2339n$—1, expressly refers to a marriage which may be validly contracted *"in this state."*

Violations of the terms and conditions of many of these marriage license laws subject the parties thereto to penalties or forfeitures; particularly secs. $2339n$—1, $2339n$—8, $2339n$—15, $2339n$—16, $2339n$—17, $2339n$—18, $2339n$—19, Stats. Such fines or forfeitures, by sec. $2339n$—20, are recoverable in an action of debt and therefore presumably are under the provisions of ch. 142 (secs. 3294 to 3313, inclusive), and in which the state becomes an interested party. Manifestly the state could not create or even acquire an interest of such nature as is involved in the right to recover fines or forfeitures for a transaction without its boundaries.

Further, under this very sec. $2339n$—21, *supra,* and just above quoted, though declaring that marriages in violation of the provisions of the law shall be "null and void," yet nevertheless it also provides that such "null and void" marriage may be subsequently validated by a subsequent compliance with the very statutes thus violated.

By secs. $2339n$—22 and $2339n$—23, *supra,* it is declared that good-faith marriages shall not be void in the event of

there existing certain irregularities declared immaterial, some of which appear quite substantial; as, for instance, a want of authority or jurisdiction in the person officiating, the issuing of a license without the consent of the parents or by a county clerk not having jurisdiction to issue the same, or in the form of the application for the license itself, or other grounds in those sections set forth.

It further appears that these particular provisions were enacted as the result of a report to the legislature by the commissioners on uniform state laws heretofore appointed under secs. 13.31 and 13.32, Stats. Their duties were to act in conventions with like commissioners of other states for the purpose of advising and recommending to the legislature measures tending to secure uniform legislation in the different states. Sec. 2339n—26 declares that the general purpose of this marriage license law is to make uniform the laws of those states which enact them, and it should therefore be construed as being in harmony and uniformity with similar provisions in other states which have or hereafter shall adopt the same. The substance of such recommended marriage license law appears to have been adopted by the following states besides our own, viz.: Vermont in 1912, Massachusetts in 1913, and Illinois in 1915.

We therefore hold that this marriage license law as contained in secs. 2339n—1 to 2339n—27 cannot be considered as having any extraterritorial effect and therefore as not affecting the marriage here before us or as bringing it within the purview of sec. 2330m, supra.

The question of the construction that should be given to this marriage license law, and particularly as to sec. 2339n—21, supra, in case of a violation of the provisions of such license law by parties to a marriage celebrated or consummated within this state, is not before us and we express no opinion thereon.

In disposing of the question still remaining, as to whether or not the failure by defendant to comply with the eugenic

marriage law (sec. 2339m, supra), considered either in con-
nection with the marriage evasion law (sec. 2330m) or as
an independent proposition, we fully appreciate the force
and weight that should be given to the reasoning of the trial
court and the argument here submitted that such default is
sufficient ground for the courts of this state to annul a mar-
riage solemnized in Michigan. We appreciate also the
possible far-reaching effect of a decision either way on such
an important question.

The requirement of such ante-nuptial physical examina-
tion of applicants for license for marriage ceremonies to be
solemnized in this state is declared to be within the proper
field of legislative action, and the evident purposes of the
act fully discussed, in the case of *Peterson v. Widule,* 157
Wis. 641, 147 N. W. 966. The question of its constitu-
tionality, so far at least as it affects marriage ceremonies
within this state, is there settled and is now at rest.

As originally enacted by ch. 738, Laws 1913, it contained
provisions subjecting a county clerk unlawfully issuing a
license without such certificate to imprisonment from one
to five years, and a physician wilfully making false state-
ments therein subject to conviction for perjury and the rev-
ocation of his license.

By ch. 525, Laws 1915, evidently recognizing the sugges-
tion made by this court in the *Peterson v. Widule Case,*
*supra,* in that regard, these penalties were reduced to a fine
of not more than $100 or not more than six months' im-
prisonment for such violation by the county clerk and physi-
cian respectively.

Sub. 5, sec. 1, ch. 738, Laws 1913, provided for the
punishment by imprisonment not more than one year of any
person a resident of this state who, intending to evade the
provisions of the act in question, should go into another state
and have a marriage there solemnized and fail within one
year from such marriage, on returning to this state, to file
with the county clerk of the county in which he shall then

Lyannes v. Lyannes, 171 Wis. 381.

be a resident a similar certificate. By ch. 525, Laws 1915, such sub. 5 was repealed, and the penalty clause therein provided does not subsequently appear in our law.

At the same session of the legislature, ch. 270, Laws 1915 (sec. 2330m, Stats.), was enacted, and which has been cited at the head of this opinion.

It is urged that the omission of the penal provision found in said sub. 5, sec. 1, and then the re-enactment, by said sec. 2330m, of what it was urged was the main purpose of ch. 738, Laws 1913, indicates a legislative intent to make a marriage solemnized without such prerequisite ante-nuptial physical examination a prohibited one, rather than one which subjects the participant to punishment only, and a male party to a marriage without such prerequisite is therefore "disabled and prohibited" from entering into such ceremony, and under the other provisions of the law his marriage is necessarily null and void whether within or without the state.

We are however forced to the conclusion that the same line of reasoning that has led us to the determination above reached as to the marriage license law having no extraterritorial effect, applies equally to this eugenic marriage law's requirement of an ante-nuptial physical examination. We are not unmindful in reaching this conclusion of the fact that under the original act in 1913 and until amended by ch. 212, Laws 1917, such ante-nuptial physical examination was required to be by a physician of this state, and that by such amendment in 1917 provision was made for the issuing of such a certificate by a physician in the state in which the male person shall reside. We cannot regard such amendment, however, as doing more than to afford a nonresident male desiring a solemnization of his marriage within this state a more convenient method of complying with our law, rather than as indicating that the statute was intended to be of extraterritorial effect so far as affecting marriages by residents of this state without this state.

The requirement of the ante-nuptial physical examination under this law is made obligatory only upon him who is an applicant for a marriage license, and this must be construed to refer to the applicant for a marriage license within this state for a marriage ceremony to be solemnized here.

The eugenic marriage law, therefore, or sec. 2339m, Stats., and undoubtedly its companion statute, sec. 2339n, which provides for the obtaining by any male applicant for a license who had ever been afflicted with a venereal disease of a proper certificate as to a complete cure, does not make null or void the outside marriage and does not "disable or prohibit," within the meaning of the term as used in sec. 2330m, persons otherwise competent and capable of contracting a valid marriage who do so contract without the state.

The last point urged by plaintiff in support of her complaint, and sustained by the trial court, is on the ground that sufficient appears therefrom to show such a fraud as to make it ground for annulment of the marriage ceremony under the provisions of sub. (4), sec. 2351, *supra*. But two possible grounds can be found in the allegations of the complaint upon which such relief could be predicated: (1) that the plaintiff was deceived by the false representations of the defendant in that regard into taking unto herself a husband who was two years younger than he represented himself to be; and (2) that the inducing her to enter into a futile marriage ceremony in Michigan, an evasion of the Wisconsin law, was of such a humiliating nature as amounted to a fraud. The trial court in his opinion based his conclusion that the complaint was good on this branch of the case upon the second ground only.

In our judgment neither of these grounds or both is or are of such substance as to meet the requirements of the substantial nature of the fraud that must be shown as to this particular form of contract before it can be declared null and void.

A moment's consideration of the immense possibilities that would be open to those entrants into the matrimonial field, on subsequent disillusionment or disappointment to appeal to a court to annul the relationship on the ground that either had been deceived by the other as to the real number of years that such other had passed upon this earth, is more than sufficient to make us refrain from establishing such a precedent.

The very substantial nature of the alleged fraud, which it has been uniformly held must be shown before a marriage ceremony may be annulled for the fraud specified in sub. (4), sec. 2351, needs no extended discussion. Concealment by the female of prior unchastity is not. *Varney v. Varney,* 52 Wis. 120, 123, 8 N. W. 739; *Browning v. Browning,* 89 Kan. 98, 130 Pac. 852. Concealment of the fact of the existence of a venereal disease is such. *C—— v. C——,* 158 Wis. 301, 304, 148 N. W. 865. See, also, *Winner v. Winner,* decided herewith (*post,* p. 413, 177 N. W. 680). See, also, *Davis v. Davis* (N. J.) 106 Atl. 644; 26 Cyc. 905; 9 Ruling Case Law, 295.

There is a further reason why relief on the ground of fraud could not properly be granted the plaintiff in this case. Although the marriage took place on June 14th the further allegation is to the effect that she left her husband on the following day, June 15th, and "has never since cohabited with him." Although this is a negation of cohabitation after June 15th, it is nevertheless in effect an admission that there was cohabitation prior to her leaving the defendant, and therefore a consummation of the marriage within the provisions of said sub. (4), sec. 2351, and the well recognized authorities.

We summarize the results thus arrived at on the questions involved as follows:

(1) That actions for the annulment of an alleged marriage under sec. 2351, Stats., are of exclusive statutory jurisdiction.

(2) That the marriage license law (secs. 2339n—1 to 2339n—27, inclusive) is only applicable to marriages solemnized in the state of Wisconsin and has no extra-territorial effect.

(3) That sec. 2339m, providing for ante-nuptial physical examination, also has no extraterritorial effect and is applicable only to those who are applicants for a license to marry within the state of Wisconsin.

(4) That sec. 2330m, so far as it relates to marriages solemnized without the state of Wisconsin, renders null and void such pretended marriages only so far as the parties thereto are disabled or prohibited from entering into marriage under any circumstances under the laws of Wisconsin and to such form of marriages as can receive no validity by reason of the consent of parents if the parties are minors, the issuing of a license, or the ante-nuptial physical examination or other statutory requirements. In other words, that such section makes null and void in this state only such foreign marriages as are prohibited by sec. 2330.

(5) That sufficient grounds are not alleged to support an action for annulment on the ground of fraud.

It follows therefrom that the demurrer to the complaint should have been sustained.

*By the Court.*—The order overruling the demurrer to the complaint is reversed, and the cause remanded for further proceedings.