Lanham, Respondent, vs. Lanham and others, Appellants.

*September 10—September 29, 1908.*

*Marriage: Divorce: Statute prohibiting remarriage within year: Construction and effect: Evasion by marriage in another state: Validity: Common-law marriage.*

1. A state has power to declare that marriages between its own citizens contrary to its established policy shall have no validity in its courts, even though they be celebrated in other states under whose laws they would ordinarily be valid; but the legislative intention that a statute should have such effect should be quite clear.

2. Sec. 2330, Stats. (Supp. 1906; Laws of 1905, ch. 456)—providing that it shall be unlawful for any person divorced by any court of this state to marry again within one year, and that any such marriage shall be null and void—is a declaration of public policy and is clearly intended to control the conduct of residents of this state whether they be within or outside its boundaries.

3. When persons domiciled in this state and subject to the provisions of said statute leave the state for the purpose of evading those provisions, and go through the ceremony of marriage in another state and return to their domicile, such pretended marriage is within the provisions of the statute and will not be recognized by the courts of this state.

[4. Whether a judgment of divorce under the laws of this state should/not be construed as containing an inhibition of marriage of either party within one year which must be given "full faith and credit" (under sec. 1, art. IV, Const. U. S.) in all other

states, so that such a marriage is not valid anywhere, is not decided.]

5. For the purpose of evading the statute above mentioned a divorced woman was married in Michigan to another resident of this state. They returned here and cohabited as husband and wife until the husband's death some months after the expiration of a year from the divorce. They had talked about a remarriage after the year, but it never took place on account of the husband's illness and death. *Held*, that there was no common-law marriage.

[APPEAL from a judgment of the circuit court for Monroe county: J. J. FRUIT, Circuit Judge. *Reversed.*

The plaintiff applied to the county court of Monroe county for an allowance for her support out of the estate of James W. Lanham, deceased, claiming that she was the widow of said deceased. The application was contested and denied in the county court, but on appeal that judgment was reversed and an allowance granted, and from this judgment the heirs of Lanham appeal.

The facts are few and simple. On and prior to the 15th day of September, 1905, the plaintiff was a resident of this state and was the wife of one J. R. Sherman. On the day named she obtained a judgment of divorce from Mr. Sherman for the purpose of marrying the deceased, who was then a resident of Wisconsin and a man eighty-four years of age. After the divorce both parties learned that the law of Wisconsin prohibited the plaintiff from marrying again until the expiration of one year from the divorce. For the purpose of avoiding the effect of the law they went to Menominee, Michigan, October 10, 1905, and were there married by a justice of the peace, and returned to Wisconsin on the following day. They immediately assumed the relations of husband and wife and lived and cohabited together in Monroe county until Lanham's death March 13, 1907. On March 8, 1907, the plaintiff made application to the county judge of Monroe county for a permit to marry Lanham,

but he was then very ill and no ceremony was ever performed.

The circuit court concluded that there was a valid common-law marriage between the parties, resulting from their living and cohabiting together as man and wife after the expiration of one year from the date of the decree of divorce, and held that the plaintiff was the lawful widow of the deceased and entitled to an allowance as such.

For the appellants there was a brief by *Higbee & Higbee,* and oral argument by *E. C. Higbee.* They argued, among other things, that the marriage was not valid in this state. *Sturgis v. Sturgis* (Oreg.) 93 Pac. 696; *Estate of Stull,* 183 Pa. St. 625, 39 L. R. A. 542; *Pennegar v. State,* 87 Tenn. 244, 2 L. R. A. 703; *Sussex Peerage Case,* 11 Cl. & F. 85; *Williams v Oates,* 27 N. C. (5 Ired. Law) 535; *State v. Tutty,* 41 Fed. 753; *Conn v. Conn,* 2 Kan. App. 419, 42 Pac. 1006; *McLennan v. McLennan,* 31 Oreg. 480, 50 Pac. 802, 38 L. R. A. 863; *Kruger v. Kruger* (Ill. Super. Ct.) 36 Nat. Corp. Rep. 442; *Williams v. Williams,* 63 Wis. 58; *Zahorka v. Geith,* 129 Wis. 498, 505; Story, Confl. Laws, secs. 86, 87; Wharton, Confl. Laws, secs. 159–165b. There was an entire absence of proof as to the law of Michigan, and in such case a court of this state must presume the law there to be the same as here. *Rape v. Heaton,* 9 Wis. 329; *MacCarthy v. Whitcomb,* 110 Wis. 113; *Hyde v. German Nat. Bank,* 115 Wis. 170; *Hynes v. McDermott,* 82 N. Y. 41; *Bailey v. State,* 36 Neb. 808, 55 N. W. 241; *People v. Loomis,* 106 Mich. 250, 64 N. W. 18; *Comm. v. Graham,* 157 Mass. 73, 16 L. R. A. 578; *Jackson v. Jackson,* 82 Md. 17, 34 L. R. A. 776; *Comm. v. Stevens,* 196 Mass. 280, 82 N. E. 33. The relationship between these parties having been illegal in its inception, it must be held to have been continued, unless there is affirmative proof of subsequent marriage. *Drawdy v. Hesters,* 130 Ga. 161, 60 S. E. 451; *Comm. v. Stevens,* 196 Mass. 280, 82 N. E. 33; *Thompson v. Thompson,* 114 Mass. 566.

For the respondent there was a brief by *Masters, Graves & Masters,* and oral argument by *R. B. Graves.* They contended, *inter alia,* that when a marriage is established by evidence or admissions it is presumed to be valid, and the burden of establishing the contrary fact rests on the party who attacks it.    26 Cyc. 877.    In case of conflicting presumptions in civil cases, the presumption in favor of marriage generally prevails over all others.    3 Elliott, Ev. § 2486; *Johnson v. Johnson,* 114 Ill. 611, 55 Am. Rep. 883, 2 N. E. 232.    The burden of proving restrictions in another state upon the remarriage of divorced persons is upon the person alleging them.    *State v. Shattuck,* 69 Vt. 403, 40 L. R. A. 428; *Hutchins v. Kimmell,* 31 Mich. 126, 18 Am. Rep. 164; *Ward v. Morrison,* 25 Vt. 593, 601.    The weight of authority holds that if a marriage between divorced persons is valid according to the *lex loci,* it will be upheld by the courts of the state which enacted the statute prohibiting it and in which the parties to the marriage are domiciled, notwithstanding that the parties went out of the state to solemnize the same for the express purpose of evading the law of the domicile and of the forum.    *Hills v. State,* 61 Neb. 589, 57 L. R. A. 155, and note; *Comm. v. Lane,* 113 Mass. 458; *Medway v. Needham,* 16 Mass. 157; *Ross v. Ross,* 129 Mass. 243; *Van Voorhis v. Brintnall,* 86 N. Y. 18, 40 Am. Rep. 505; *Thorp v. Thorp,* 90 N. Y. 602, 43 Am. Rep. 189; *Moore v. Hegeman,* 92 N. Y. 521, 44 Am. Rep. 408; *State v. Shattuck,* 69 Vt. 403, 40 L. R. A. 428; *State v. Richardson,* 72 Vt. 49, 47 Atl. 103; *Phillips v. Madrid,* 83 Me. 205, 12 L. R. A. 862; *Fuller's Adm'r v. Fuller,* 40 Ala. 301; *State v. Bentley,* 75 Vt. 163, 53 Atl. 1068; *Sutton v. Warren,* 10 Met. 451; *Putnam v. Putnam,* 8 Pick. 433; *State v. Weatherby,* 43 Me. 258, 69 Am. Dec. 56; *Comm. v. Hunt,* 4 Cush. 49; *Stack v. Stack,* 6 Dem. Sur. (N. Y.) 280; *In re Chace,* 26 R. I. 351, 69 L. R. A. 493.    The principal cases holding contrary views are *Williams v. Oates,* 27 N. C. (5 Ired. Law) 535; *Estate of*

*Stull,* 183 Pa. St. 625, 39 L. R. A. 539; *Pennegar v. State,* 87 Tenn. 244, 2 L. R. A. 703; *Kinney v. Comm.* 30 Gratt. 858, 32 Am. Rep. 690; *Dupre v. Boulard's Ex'r,* 10 La. Ann. 411; *State v. Kennedy,* 76 N. C. 251, 22 Am. Rep. 683.   No more reason exists for giving the statute under consideration extraterritorial force than any other legislative enactment forbidding in unqualified terms the doing of an act, and which must always be understood as forbidding the thing in the•state.   *Charles v. People,* 1 N. Y. 180; *Sims v. Sims,* 75 N. Y. 466; *Nat. T. Co. v. Gleason,* 77 N. Y. 400; *Van Voorhis v. Brintnall,* 86 N. Y. 18; *Western T. & C. Co. v. Kilderhouse,* 87 N. Y. 430; *Phillips v. Madrid,* 83 Me. 205, 12 L. R. A. 862.   In the following cases where the original cohabitation was preceded by a ceremonial marriage which was void because one of the parties was already married, it was held that the continuance of the cohabitation after the removal of the impediment by the death of the former husband or wife, in connection with circumstances tending to show that the parties regarded their relations as of a matrimonial character and held themselves out as husband and wife, created a presumption of marriage, although there was no evidence of another ceremony.   *Hyde v. Hyde,* 3 Bradf. Sur. 509; *Donnelly v. Donnelly's Heirs,* 8 B. Mon. 113; *Fenton v. Reed,* 4 Johns. 52, 4 Am. Dec. 244; *Adams v. Adams,* 57 Miss. 267; *Appeal of Reading F. Ins. & T. Co.* 113 Pa. St. 204, 57 Am. Rep. 457–463, note; *Chamberlain v. Chamberlain,* 68 N. J. Eq. 736, 62 Atl. 680; *Schuchart v. Schuchart,* 61 Kan. 597, 50 L. R. A. 180; *Petit v. Petit,* 45 Misc. 155, 91 N. Y. Supp. 979; *Eaton v. Eaton,* 66 Neb. 676, 60 L. R. A. 605; *Manning v. Spurck,* 199 Ill. 447, 65 N. E. 342; *Barker v. Valentine,* 125 Mich. 336, 51 L. R. A. 787; *In re Schmidt,* 42 Misc. 463, 87 N. Y. Supp. 428; 1 Bishop, Mar., Div. & Sep. §§ 970, 975, 979; *Univ. of Mich. v. McGuckin,* 62 Neb. 487, 57 L. R. A. 917; *Teter v. Teter,* 88 Ind. 494; *S. C.* 101 Ind. 129; *Flanagan v. Flanagan,* 122 Mich. 386, 81 N. W. 258.

WINSLOW, C. J.   Sec. 2330, Stats. (1898), as amended by ch. 456, Laws of 1905, provides, among other things, that "it shall not be lawful for any person divorced from the bonds of matrimony by any court of this state to marry again within one year from the date of the entry of such judgment or decree and the marriage of any divorced person solemnized within one year from the date of the entry of any such judgment or decree of divorce shall be null and void."   A proviso to the section authorizes the circuit judge to grant permission to the divorced parties to remarry within the year, but this is of no moment here.   The first question is whether the Michigan marriage was valid notwithstanding the provisions of this law.

The general rule of law unquestionably is that a marriage valid where it is celebrated is valid everywhere.   To this rule, however, there are two general exceptions which are equally well recognized, namely: (1) Marriages which are deemed contrary to the law of nature as generally recognized by Christian civilized states; and (2) marriages which the lawmaking power of the forum has declared shall not be allowed validity on grounds of public policy.   An exhaustive review of the many and somewhat conflicting authorities upon this general subject will be found in a note to *Hills v. State* in 57 L. R. A. at p. 155; *S. C.* 61 Neb. 589, 85 N. W. 836.   The first of these exceptions covers polygamous and incestuous marriages and has no application here, and the question presented is whether the case comes within the second exception.

A state undoubtedly has the power to declare what marriages between its own citizens shall not be recognized as valid in its courts, and it also has the power to declare that marriages between its own citizens contrary to its established public policy shall have no validity in its courts, even though they be celebrated in other states under whose laws they would ordinarily be valid.   In this sense, at least, it has

power to give extraterritorial effect to its laws.   The inten-
tion to give such effect must, however, be quite clear.   So
the question must be, in the present case, whether our legis-
lature by the act quoted declared a public policy and clearly
indicated the intention that the law was to apply to its citi-
zens wherever they may be at the time of their marriage.
To our minds there can be no doubt that the law was intended
to express a public policy.   There have been many laws in
other states providing that the guilty party in a divorce ac-
tion shall not remarry for a term of years, or for life, and
these laws have generally been regarded merely as intended
to regulate the conduct of the divorced party within the state
and not as intended to follow him to another jurisdiction and
prevent a marriage which would be lawful there; in other
words, they impose a penalty local only in its effect.   Under
this construction the remarriage of such guilty party in an-
other state has generally been held valid notwithstanding the
prohibition of the local statute.   Of this class are the cases
of *Frame v. Thormann,* 102 Wis. 653, 79 N. W. 39; *Van
Voorhis v. Brintnall,* 86 N. Y. 18; and *State v. Shattuck,*
69 Vt. 403, 38 Atl. 81, and others which might be cited.

It is very clear, however, that the statute under considera-
tion is in no sense a penal law.   It imposes a restriction
upon the remarriage of both parties, whether innocent or
guilty.   Upon no reasonable ground can this general restric-
tion be explained except upon the ground that the legisla-
ture deemed that it was against public policy and good mor-
als that divorced persons should be at liberty to immediately
contract new marriages.   The inference is unmistakable that
the legislature recognized the fact that the sacredness of mar-
riage and the stability of the marriage tie lie at the very
foundation of Christian civilization and social order; that di-
vorce, while at times necessary, should not be made easy, nor
should inducement be held out to procure it; that one of the
frequent causes of marital disagreement and divorce actions

is the desire on the part of one of the parties to marry an-
other; that if there be liberty to immediately remarry, an in-
ducement is thus offered to those who have become tired of
one union, not only to become faithless to their marriage
vows, but to collusively procure the severance of that union
under the forms of law for the purpose of experimenting with
another partner, and perhaps yet another, thus accomplish-
ing what may be called progressive polygamy; and, finally,
that this means destruction of the home and debasement
of public morals. In a word, the intent of the law plainly
is to remove one of the most frequent inducing causes for the
bringing of divorce actions. This means a declaration of
public policy or it means nothing. It means that the legis-
lature regarded frequent and easy divorce as against good
morals, and that it proposed, not to punish the guilty party,
but to remove an inducement to frequent divorce.

To say that the legislature intended such a law to apply
only while the parties are within the boundaries of the state,
and that it contemplated that by crossing the state line its
citizens could successfully nullify its terms, is to make the
act essentially useless and impotent and ascribe practical
imbecility to the lawmaking power. A construction which
produces such an effect should not be given it unless the
terms of the act make it necessary. The prohibitory terms
are broad and sweeping. They declare not only that it shall
be unlawful for divorced persons to marry again within the
year, but that any such marriage shall be *null and void.*
There is no limitation as to the place of the pretended mar-
riage in express terms, nor is language used from which
such a limitation can naturally be implied. It seems un-
questionably intended to control the conduct of the residents
of the state whether they be within or outside of its bound-
aries. Such being, in our opinion, the evident and clearly
expressed intent of the legislature, we hold that when persons
domiciled in this state and who are subject to the provisions

of the law leave the state for the purpose of evading those provisions, and go through the ceremony of marriage in another state and return to their domicile, such pretended marriage is within the provisions of the law and will not be recognized by the courts of this state. Further than this we are not required to go. This view is sustained by the following cases: *Brook v. Brook,* 9 H. L. Cas. 193; *Sussex Peerage Case,* 11 Cl. & F. 85; *State v. Tutty,* 41 Fed. 753; *Pennegar v. State,* 87 Tenn. 244, 10 S. W. 305, 2 L. R. A. 703; *McLennan v. McLennan,* 31 Oreg. 480, 50 Pac. 802; *Estate of Stull,* 183 Pa. St. 625, 39 Atl. 16, 39 L. R. A. 542; *Kruger v. Kruger* (Super. Ct. Ill.) 36 Nat. Corp. Rep. 442.

Another view of the question, leading to the same result, has been suggested to our minds, which will be stated. The statute cited is an integral part of the divorce law of this state and in legal effect enters into every judgment of divorce. This being so, must not any judgment of divorce be construed as containing an inhibition upon the parties, rendering them incapable of legal marriage within a year, which must be given "full faith and credit" in all other states, under sec. 1, art. IV, of the constitution of the United States? And if it be entitled to receive such faith and credit, how can a marriage within another state be considered valid anywhere? Are not the parties incapable of contracting such a marriage anywhere, for the reason that they have not yet been relieved of their incapacity to marry another, resulting from their former marriage, or, in other words, for the reason that their divorce is not complete until the expiration of the year? We suggest these questions without definitely expressing an opinion upon them or making them a ground of decision.

The Michigan marriage being held void, the question recurs whether the finding that there was a common-law marriage, resulting from the fact that the parties lived and co-

habited together as man and wife for about six months, can be sustained. This must be answered in the negative. This court has held that, where cohabitation is illegal in its inception, the relation between the parties will not be transformed into marriage by evidence of continued cohabitation, or by any evidence which falls short of establishing either directly or circumstantially the fact of an actual contract of marriage after the bar has been removed. *Williams v. Williams,* 46 Wis. 464, 1 N. W. 98; *Spencer v. Pollock,* 83 Wis. 215, 53 N. W. 490; *Thompson v. Nims,* 83 Wis. 261, 53 N. W. 502. There was no such evidence here. At most the evidence only shows that the parties continued to live together after the expiration of the year in the manner of husband and wife, and talked about a remarriage, which never took place on account of the husband's illness and death. The evidence in fact rebuts any inference of remarriage rather than supports it.

. *By the Court.*—Judgment reversed, and action remanded to the circuit court with directions to affirm the judgment of the county court.

SIEBECKER, J., dissents.

