STATE EX REL. UNITED·STATES FIDELITY & GUARANTY
COMPANY, Appellant, vs. SMITH, Commissioner of Insurance, Respondent.

SAME, Petitioner, vs. STEVENS, Circuit Judge, and another,
Respondents.

*March 15—June 3, 1924.*

*Insurance: Railroad accident policies: Statutes: Interpretation: Constitutional law: Reasonableness of regulation: Police power: Standard insurance policies: Insurance commissioner: Jurisdiction: Impairment of contract: Policy issued after statute enacted: Interstate commerce: Approval of policy by other states: Patents: Regulation by state of patented article.*

1. Statutes should be expounded not merely according to their letter but according to their meaning. p. 315.

2. Though the primary rule of construction of statutes is to give effect to the legislative intent, yet if a statute is plain and unambiguous interpretation is unnecessary. It is not the function of a court to add language to a statute or to add exceptions because the statute may to the court seem unwise. p. 316.

3. One object of the standard accident policy statute (par. (1), (2), and (3), sub. (12), sec. 208.05, Stats. 1923) was that such policy should be delivered, making it possible for holders to easily know the contents thereof; and a railroad passenger accident policy, contained on a coupon sold by a patented device and furnishing only meager information as to the contents of the policy, which could be seen only by calling for a copy filed with the railroad company, does not conform either to the letter or spirit of the statute. p. 317.

4. Par. (4), sub. (12), sec. 208.05, Stats., specially providing for railroad ticket accident policies, and allowing the omission therefrom of some provisions required in the regular standard policy, indicates the legislative intent that passenger accident policies are included within the standard accident policy statute. p. 317.

5. A coupon ticket accident policy, sold to a passenger who pays his own premium and gets a coupon or evidence that on demand he may have his policy, which was delivered to the railroad for the use of the passenger insured, does not fall within par. (1), sub. (12), sec. 208.05, Stats., providing that the standard accident policy statute does not apply to general

310    SUPREME COURT OF WISCONSIN. [June

State ex rel. U. S. F. & G. Co. v. Smith, 184 Wis. 309.

or blanket policies of insurance issued to a corporation and insuring its officers, members, or employees, or classes or departments thereof.   p. 318.

6. Insurance contracts are so far matters of public interest that they may be reasonably regulated under the police power. p. 320.

7. Although the legislature may not delegate to state officers the power to prescribe the form of insurance contracts, it can leave to administrative officers like insurance commissioners the proper administration of statutes relating to standard provisions in policies.   p. 320.

8. The refusal to permit the sale of railroad passenger accident policies under a patented device, contrary to the standard accident policy statute, is not derogative of the rights of the patentee under his patent.   p. 321.

9. Patent laws do not displace the police power of the state, and the rights of patentees are subordinate to the general authority of the state over all the property within its limits.   p. 322.

10. Although in a large degree the legislature determines what laws shall be passed and in what manner the police power is to be exercised, the courts determine whether that exercise has been unreasonable, whether it arbitrarily imposes restrictions on lawful occupations, or whether it invades constitutional rights.   p. 322.

11. The legislature may properly regulate the manner in which insurance is to be conducted, and although the manner of regulation may be inexpedient and unwise it is not necessarily invalid; and in view of the objects sought to be accomplished and the evils sought to be remedied, the legislature did not exceed its police power in enacting the standard accident insurance policy statute.   p. 322.

12. Where such standard accident policy statute was enacted before a contract concerning the sale of passenger accident policies was made, the validity of the contract was not impaired by a ruling of the insurance commissioner that it was contrary to statute and by the judgment of the circuit court affirming such ruling.   p. 322.

13. The fact that officials of other states through which an interstate railroad ran had approved a form of accident insurance policy for passengers on such railroad, is not conclusive on the officers of this state.   p. 322.

14. A ruling of the commissioner of insurance that a railroad passenger accident policy issued in this state by a foreign corporation for use on an interstate railroad was contrary to the standard accident policy statute, and a judgment affirming such ruling, was not an attempt to regulate interstate com-

merce, regardless of the fact that coupons evidencing the policy were attached to railroad tickets, or that the form of the insurance might serve as an inducement to travel on lines where such insurance could be procured.  p. 323.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

ORIGINAL PROCEEDING by *certiorari. Dismissed.*

This is a consolidated cause embracing (1) an appeal from a judgment of the circuit court for Dane county affirming an order of the commissioner of insurance and dismissing an action by *certiorari* to review the same, and (2) an original proceeding by *certiorari* in this court to review the judgment of the circuit court.

The order of the commissioner of insurance complained of requires the petitioner, a Maryland corporation, and the Minneapolis, St. Paul & Sault Ste. Marie Railroad Company to desist from issuing in this state "railroad passengers' accident insurance" by means of what is known as the "Dickson device."

On September 22, 1922, a patent was issued by the United States patent office to George E. Dickson covering a "device for providing railroad accident insurance." In the application for the patent it was stated in substance that none of the existing means for insuring passengers on railroads had met with much success; that it was not practicable to issue an insurance policy as part of a railroad ticket on account of the large size of the ticket and the impossibility of complying with the laws of the different states relative to standard provisions; that "the general object of my invention is to provide devices for issuing insurance to railroad passengers whereby it shall be possible for railroad ticket agents to issue insurance with such ease that the time required shall not be appreciably more than is required merely to issue a transportation ticket."

It was another object of the invention "to provide devices for issuing insurance to railroad passengers in con-

State ex rel. U. S. F. & G. Co. v. Smith, 184 Wis. 309.

junction with a passage ticket whereby the size of the ticket can be as small as desired, thus enabling the handling thereof with the usual railroad passenger ticket facilities, and also effecting the saving of an enormous amount of paper," and "to provide devices for issuing insurance to railroad passengers in conjunction with a passage ticket whereby the requirements of the laws of all states as to standard provisions and the size of type required in insurance policies can be complied with, and at the same time include any and all additional provisions that may be necessary fully and completely to define the insurance risk."

It was proven that the business of the railroad company extends through the states of Illinois, Michigan, Wisconsin, and Minnesota; that insurance coupons under the policy issued to the railroad company in connection with the sale of tickets in Illinois, Minnesota, and Michigan were largely in connection with interstate transportation; that the use of such coupons and the form of policy has been formally approved and allowed by the insurance commissioners for Michigan and Minnesota, and that they are issued without formal objection in the state of Illinois.

The following are the statutes principally involved:

"On and after the first day of January, 1914, no policy of insurance against loss or damage from the sickness, or the bodily injury or death of the insured by accident shall be issued or delivered to any person in this state until a copy of the form thereof and of the classification of risks and the premium rates pertaining thereto have been filed with the commissioner of insurance; nor shall it be so issued or delivered until the expiration of thirty days after it has been so filed unless the said commissioner shall sooner give his written approval thereto. If the said commissioner shall notify, in writing, the company, corporation, association, society or other insurer which has filed such form that it does not comply with the requirements of law, specifying the reasons for his opinion, it shall be unlawful thereafter for any such insurer to issue any policy in such form." Sub. (1), sec. 208.05.

"No such policy shall be so issued or delivered (1) unless the entire money and other considerations therefor are expressed in the policy; nor (2) unless the time at which the insurance thereunder takes effect and terminates is stated in a portion of the policy preceding its execution by the insurer; nor (3) if the policy purports to insure more than one person; nor (4) unless every printed portion thereof and of any indorsements or attached papers shall be plainly printed in type of which the face shall not be smaller than ten-point; nor (5) unless a brief description thereof be printed on its first page and on its filing back in type of which the face shall not be smaller than fourteen-point; nor (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply. . . ."   Sub. (2), sec. 208.05.

"Every such policy so issued shall contain certain standard provisions, which shall be in the words and in the order hereinafter set forth and be preceded in every policy by the caption 'Standard Provisions.' "   Sub. (3), sec. 208.05.

"Nothing in this act, however, shall apply to or affect any policy of liability or workmen's compensation insurance or any general or blanket policy of insurance issued to any municipal corporation or department thereof, or to any corporation, copartnership, association or individual employer, police or fire department, underwriter's corps, salvage bureau, or like associations or organizations, where the officers, members or employees or classes or departments thereof are insured for their individual benefit against specified accidental bodily injuries or sickness while exposed to the hazards of the occupation or otherwise in consideration of a premium intended to cover the risks of all the persons insured under such policy."   Sub. (12) (1), sec. 208.05.

"The provisions of this act contained in clause (5) of subsection (2) and clauses (2), (3), (8) and (12) of subsection (3) may be omitted from railroad ticket policies sold only at railroad stations or at railroad ticket offices by railroad employees."   Sub. (12) (4), sec. 208.05.

For the petitioner and appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Wheeler P. Bloodgood* and *Albert K. Stebbins,* of counsel, all of

Milwaukee, and oral argument by *Mr. Wheeler P. Blood-good* and *Mr. Stebbins.*

For the respondents there was a brief by the *Attorney General, Emmett L. Wingert* of Madison, and *Robert M. Rieser,* deputy attorney general, and oral argument by *Mr. Rieser.*

JONES, J.     It is the first contention of appellant's counsel that the policy of insurance issued to the railroad company and the coupons issued thereunder are not within or subject to the standard policy law of the state and therefore there is no subject matter within the jurisdiction of the commissioner.

Counsel point out that the principal object of the standard policy law was to promote uniformity in the administration of insurance law throughout the country; that the standard policy laws of Minnesota, Michigan, and Wisconsin are identical, but that the purpose of their enactment has been defeated in the instant case since the commissioners of Minnesota and Michigan authorized the issuance of the coupons under the policy in this proceeding while the commissioner of Wisconsin has ordered their discontinuance.

It is argued that the evils sought to be remedied by a statute constitute a guide to its interpretation.     As illustrating this proposition counsel cite the case *Church of the Holy Trinity v. U. S.* 143 U. S. 457, 12 Sup. Ct. 511, in which the church made a contract with a clergyman, an alien and a resident of England, whereby he was to remove to New York City and become the rector and pastor of the church.     An action was brought to recover the penalty prescribed by the contract labor law.     It was the decision of the court that although the act of the corporation was within the letter of the statute, yet it was not within the statute because not within its spirit nor within the intention of its makers.     It was further held that a guide to the meaning of a statute is found in the evil which it is designed to remedy

and for this "the court properly looks at contemporaneous events, the situation as it existed, and as it was pressed upon the attention of the legislative body." *Church of the Holy Trinity v. U. S.* 143 U. S. 457, 463, 12 Sup. Ct. 511.

Counsel also cite on this proposition *Takao Ozawa v. U. S.* 260 U. S. 178, 43 Sup. Ct. 65, and *Heydenfeldt v. Daney G. & S. M. Co.* 93 U. S. 634.

It is further contended in the brief that the issuance of individual policies was not an evil intended to be remedied by the statute, since it provided for coverage by blanket policies which might be issued by responsible corporations for the protection of persons having with them contractual relations, and it was considered that such policies were not subject to any of the impositions incident to individual policies, and therefore they were exempted.

It is further pointed out in the brief that it was intended to remedy only the evils in connection with the ordinary individual policies, since the statute exempted from certain of its provisions all forms of travel policies then known to the business. Counsel say in their brief:

"The purpose of the law was obviously to subject to its requirements all *individual* accident and health policies issued in the usual course, and to enforce uniformity in the phraseology and form of such policies, at the same time exempting from its operations and burdens all blanket policies, issued to theoretically responsible corporations for the benefit of those occupying contractual relations with them and railroad travel policies issued at stations and ticket offices by the regular employees of railroad companies."

It is a familiar and ancient rule that statutes should be expounded not merely according to the letter but according to the meaning. In the case above cited, in the very interesting opinion by Mr. Justice BREWER, this rule was liberally applied, and it was held that the title of the act, the evil intended to be remedied, and the history of the statute all concurred in showing the intent of Congress was simply

State ex rel. U. S. F. & G. Co. v. Smith, 184 Wis. 309.

to stay the influx of cheap unskilled labor.    In closing the opinion it was said:

"It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute." *Church of the Holy Trinity v. U. S.* 143 U. S. 457, 472, 12 Sup. Ct. 511.

Although it is the primary rule of construction to give effect to the legislative intent, yet if a statute is plain and unambiguous then interpretation is unnecessary.    It is not the function of the court to add language to a statute or to add exceptions because the statute may to the court seem unwise.

"The courts have no function of legislation, and simply seek to ascertain the will of the legislator.    It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise where there are cogent reasons for believing that the letter does not fully and accurately disclose the intent.    No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute." 2 Lewis' Sutherland, Stat. Constr. (2d ed.) p. 700; *U. S. v. Goldenberg,* 168 U. S. 95, 18 Sup. Ct. 3, 42 Lawy. Ed. 394.

Many cases might be cited illustrating the rule that the primary consideration in construing statutes is to ascertain the legislative intent; but perhaps a greater number to the effect that the intention must be primarily determined from the language of the statute itself, and that intentions cannot be imputed to the legislature except those to be gathered from the terms of the law.

Sec. 208.05, Stats., is a prohibition against the issuance of policies of insurance until certain conditions have been complied with.    Sub. (12) (1) makes sec. 208.05 · inapplicable to certain forms of general or blanket policies of insurance, and sub. (12) (4) provides that certain provisions

State ex rel. U. S. F. & G. Co. v. Smith, 184 Wis. 309.

may be omitted from railroad ticket policies sold at railroad stations or ticket offices by railroad employees.

It is plain that appellant was engaged in the business of accident insurance and that the coupons, sometimes called coupon policies, were far from complying with the requirements of par. (1), (2), and (3), sub. (12), sec. 208.05.

Undoubtedly it was one of the objects of the standard accident policy statute that policies should be delivered, making it possible that holders could easily know the contents of their contracts. The coupon furnishes only very meager information in this respect, and the only way in which the insured can ascertain the nature of his contract is to call for a copy filed with the railroad company. Clearly the method of insurance adopted does not conform to the letter of the statute and it is difficult to figure out how it conforms to the spirit.

It is argued that par. (4), sub. (12), of the statute indicates that it was not the legislative intent that this kind of insurance should be included within the statute. That subsection makes special provision for railroad ticket policies, including them within the terms of the statute, but allowing the omission of some of the provisions required in the regular standard policy, thus making some concessions for the convenience of the traveling public.

Although with these omissions the policy thus authorized is considerably less bulky than the ordinary accident policy, nevertheless it is one by which the insured can understand the material parts of his contract. The fact that the statute makes provision for railroad ticket policies and in effect prescribes what they shall contain and what may be omitted indicates the legislative intent to include within the statute insurance sold at railroad stations or ticket offices.

It is next argued by appellant's counsel that if it should be held that this form of policy falls within the general provisions of sec. 208.05, Stats., then it should be held that the coupon ticket accident policy issued to the railroads is in-

cluded within the class of policies excepted in sub. (12), quoted in the statement of facts.

Under the proposed plan the policy is delivered to the railroad company for the benefit and use of the passengers insured, and it is claimed that this is a constructive delivery and in that respect satisfies the statute. It is argued that there should be given to the words "general or blanket policy" a liberal construction broad enough to include the policies issued by the appellant.

The form of policy referred to in this section contemplates a single premium to be paid by the corporation or other entity securing the insurance *to cover the risks of all persons assured under the policy.* By the plan proposed by the appellant each insured person obtains his own insurance, pays his own premium, and obtains his coupon or evidence that he may have his policy by demanding it. On the theory of appellant's counsel there should also be given a very liberal construction to the word "classes."

The policy delivered to the railroad company clearly does not cover officers, members, or employees of the company. The passengers on a train can hardly be included in the term "departments" of the company. We do not think that passengers who buy insurance on the plan proposed can be said to be a class of a railroad company within the meaning of the statute.

The word "classes" follows the words "officers, members, or employees," describing persons who have a permanent connection with the corporation. It seems a rather strained construction to apply it to those who have no other association than that of passengers. We cannot better state our view than by adopting the language of the trial judge:

"By the use of the word 'thereof' in connection with 'classes or departments,' the legislature evidenced an intent to refer to the prior provisions of this subdivision, that is, either to different departments of corporations, associations, or organizations or classes of officers, members, or em-

ployees. Passengers of railroad trains are neither officers, members, nor employees, and cannot therefore be 'classes . . . thereof.' The groups, classes, or departments whose blanket insurance is exempt by subdivision (12) (1) of sec. 208.05, Stats., are groups or classes in existence when the insurance policy is issued, not groups or classes that are brought into being by the individuals who secure the insurance and only when the insurance is secured."

The following is a very familiar rule of statutory construction:

"The rule is that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose the general words are to be construed as applicable to persons or things or cases of like kind to those designated by the particular words." 2 Lewis' Sutherland, Stat. Constr. (2d ed.) § 422.

It is claimed by appellant's counsel that if the statute is held to prevent the proposed form of insurance it is unconstitutional as interfering with the right of contract and as an unreasonable exercise of the police power.

There is no longer doubt that a state has the power to prescribe standard policies with respect to fire insurance and to limit insurance companies, domestic or foreign, to the issuance of policies on property within the borders of the state. 14 Ruling Case Law, 859; 1 Joyce, Ins. (2d ed.) § 176a.

Statutes of this character have been adopted in many states, and in some states statutes exist the object of which is to standardize policies of life and accident insurance. These statutes are based on the theory that the business of insurance so far affects the public welfare that it is a proper subject for regulation by the state.

Experience showed that without such regulation in both fire and life policies there was infinite variety in the forms of contracts. Ingenious and ambiguous clauses, often in

print almost illegible, were inserted in such a manner that policy-holders often suffered grievous injustice.

That insurance contracts are so far matters of public interest that they may be reasonably regulated under the police power is illustrated by statutes which have been generally upheld in our own and many states as to the effect of false representations and warranties. Other illustrations of such statutes are those regulating insurance agents and brokers and those preventing rebates and discrimination in rates. By such statutes as are here referred to and by others which it is not necessary to mention the states have imposed conditions upon insurance companies restraining the liberty of contract which may be exercised by private persons, and this kind of regulation has been quite generally sustained.

Although the legislature may not delegate to officers the power to prescribe the form of insurance contracts (*Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738; 1 Cooley, Ins. 526, 529), it can leave to administrative officers like insurance commissioners the proper administration of statutes relating to standard provisions in policies. *New York Life Ins. Co. v. Hardison,* 199 Mass. 190, 85 N. E. 410; *Ætna Life Ins. Co. v. Hardison,* 199 Mass. 181, 85 N. E. 407; 14 Ruling Case Law, 859.

It was claimed in statements before the insurance commissioner that the Dickson insurance device has many advantages over the other systems of insuring passengers on railroads; that it gives much more liberal indemnity in cases of accidental death and also in case of bodily injuries; that it is much more liberal to women than the old system; that it does not exempt accidents to those who are injured while getting on or off from moving trains; that it does not except persons injured while on platforms; that it is more liberal as to age limits; that it is much less expensive; that it is a much more convenient system in that the coupons can be more quickly prepared and delivered than ordinary policies for railroad travel insurance; that all these advantages had

greatly increased the amount of accident insurance taken by the traveling public.

The above are only some of the advantages thus claimed, and it is argued that it could not have been within the intention of the legislature to prohibit a method of insurance so convenient and useful to the traveling public.

There is no rule better settled than that the responsibility for the wisdom of legislation rests with the legislature and not with the courts. In a leading case sustaining state regulation of insurance companies under the police power, the court said, quoting from a former case:

" 'The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.' " *German Alliance Ins. Co. v. Kansas,* 233 U. S. 389, 414, 34 Sup. Ct. 612; *Chicago, B. & Q. R. Co. v. McGuire,* 219 U. S. 549, 31 Sup. Ct. 259.

It would be a somewhat dangerous rule of construction to hold that a system of insurance quite different from those authorized by the statute would have been permitted by the legislature if it had been then known, and therefore was sanctioned by the act. This would not be liberal interpretation to ascertain the intent, but judicial legislation by engrafting on the statute provisions never in the legislative mind.

It is argued by appellant's counsel that the refusal to permit insurance under the plan proposed is derogative of the right of the patentee under his patent and constitutes an unreasonable and unconstitutional exercise of the police power. It seems to be well settled that the patent laws do

not displace the police powers of the state, and that the rights of patentees are subordinate to the general authority of the state over all the property within its limits.

The effect of the patent is to prevent others from manufacturing or selling the invention, but it does not enable the owner to avoid the general laws of the state. *Motion Picture P. Co. v. Universal Film Mfg. Co.* 243 U. S. 502, 37 Sup. Ct. 416; *Webber v. Virginia,* 103 U. S. 344.

In large degree the legislature must determine what laws should be passed for the protection and welfare of the public and in what manner the police power is to be exercised. But it is within the jurisdiction of the courts to determine whether that exercise has been unreasonable or whether it arbitrarily imposes unnecessary restrictions on lawful occupations or invades constitutional rights. *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 90 N. W. 1098; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137.

Cases already cited sustain the view that insurance is so far a matter concerning the public welfare that legislation may properly regulate the manner in which it is to be conducted. The manner of regulation may be inexpedient and unwise, but that does not necessarily subject it to judicial condemnation.

In view of the objects sought to be accomplished and the evils sought to be remedied we cannot say that the legislature exceeded its police powers in enacting the statute in question. *German Alliance Ins. Co. v. Kansas,* 233 U. S. 389, 34 Sup. Ct. 612; *Chicago, B. & Q. R. Co. v. McGuire,* 219 U. S. 549, 31 Sup. Ct. 259.

It is further argued that the policy issued to the railroad company was legal under the interpretation placed upon it by the states of Minnesota and Michigan and that its validity is impaired by the ruling of the commissioner and the judgment of the circuit court.

It seems to be a sufficient answer to say that the statute was enacted before the contract was made and that the fact

that officials of other states may have approved the proposed system of insurance does not make that approval binding in this state.

It is also argued that the ruling of the commissioner and the judgment of the circuit court are in violation of the United States constitution in that they constitute an attempt to regulate interstate commerce. In *New York Life Ins. Co. v. Deer Lodge Co.* 231 U. S. 495, 34 Sup. Ct. 167, it was held that the issuing of an insurance policy is not commerce but a personal contract, and that the regulations by a state in regard to policies delivered in the state by non-resident insurance companies are not unconstitutional as a burden on interstate commerce. In the opinion Mr. Justice McKenna reviewed former decisions, answering the many reasons urged for the claim that the question of interstate commerce was involved, and came to the conclusion above stated. The reasoning in the case seems conclusive, and we do not consider that the result would be changed by the fact that coupons are attached to railroad tickets or that this form of insurance might be an inducement to travel on railroad lines where such insurance could be procured.

In the hearing before the Wisconsin commissioner a very favorable showing was made with respect to the system of insurance proposed, a showing which might appeal with much force to the legislature, and it is with some regret that we feel compelled to hold that the system is not authorized by the existing statute.

*By the Court.*—The judgment of the circuit court is affirmed, and the original proceeding by *certiorari* in this court is dismissed.

Rosenberry and Eschweiler, JJ., dissent.