ESTATE OF CAMPBELL: CAMPBELL, Appellant, vs. BLUMBERG, Administratrix, Respondent.

*January 9—February 5, 1952.*

For the appellant there was a brief by *Rubin & Ruppa,* attorneys, and *W. B. Rubin* of counsel, all of Milwaukee, and oral argument by *W. B. Rubin.*

For the respondent there was a brief by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Mr. Harding.*

MARTIN, J. At the hearing the administratrix introduced a certified copy of a marriage license issued on September 19, 1931, by the county clerk of Lake county, Illinois, permitting any person legally authorized to solemnize marriage to marry Roy I. Campbell of Milwaukee, Wisconsin, forty-three years of age, and Ida Edith Blumberg of the same place, twenty-eight years of age. At the bottom of the license was a certificate by Henry F. Wallenwein, a justice of the peace of Waukegan, Illinois, certifying that said parties were united in marriage by him at Waukegan, Illinois, on September 19, 1931. She also introduced a photostatic copy of an application for marriage license duly certified by the county clerk of Lake county, Illinois. Said application was dated on the same date as the license and marriage certificate. There was also introduced a separate marriage certificate signed by the justice of the peace and witnessed by one Eugene Anderson, which the administratrix testified was given to her following the marriage ceremony and which she had retained since that time.

The objector challenged the validity of the marriage upon several grounds. He first introduced a certified copy of the birth record of Ida Blumberg, which showed that she was born on October 2, 1899. The application for marriage license gave the name of the female applicant as Ida Blumberg and her age as twenty-eight years on September 5, 1931. The application was signed by Ida Edith Blumberg. Objector next introduced in evidence a photostatic copy of a signature card from the files of a Milwaukee bank, signed by Miss Edith Blumberg on May 20, 1920, in which she gave her date of birth as September 5, 1899. The administratrix admitted her signature on the card and that she was born in 1899, and that the age given in the application for marriage license was incorrectly stated by her because of her woman's vanity. These variations in the name and age of one of the applicants have little probative value as to the validity of the marriage, and do not overcome the positive testimony of the administratrix.

The objector then proved that the parties did not reside together after the marriage ceremony; that each thereafter was listed as single in the city directories and in their separate income-tax returns; and that by statements, both oral and written, each claimed to be single.

In law, marriage is a civil contract. It is different from ordinary contracts in that it cannot be modified or abrogated by the parties themselves. Once entered into, a valid marriage contract continues until the contract is changed by law or by the death of one of the parties.

The objector further contended that the signature appearing upon the application for the marriage license was not the genuine signature of the deceased. Objector was an employee and officer of a large bank for many years, and had testified as an expert on handwriting. The administratrix called other experts who testified that the signature was that of

the deceased. Upon this point there was a dispute as to the fact. There was credible evidence to sustain the determination of the trial court, and it must stand.

The objector next attempted to prove that the deceased was incapable of being married in Wisconsin. He offered the record in an action for breach of promise commenced in the circuit court for Milwaukee county in 1930, wherein Roy I. Campbell was defendant. The case was tried in 1933. The first question of the special verdict; "Did the plaintiff and defendant enter into a mutual agreement to marry?" was answered "Yes" by the trial court. The second question, "Did the defendant, Roy I. Campbell, break that agreement and refuse to marry the plaintiff?" was answered "No" by the jury. The objector then offered to prove that in 1930 the deceased was afflicted with a venereal disease and that he was unable to obtain a doctor's certificate under the eugenic law that would permit him to get a marriage license in Wisconsin. He wished the trial court to infer that the deceased's condition of health was what kept him from marrying the plaintiff in that action, and that the deceased and Miss Blumberg, in going to Waukegan, Illinois, to be married, did so to evade the statutory requirements in Wisconsin for marriage.

Prior to that time both Wisconsin and Illinois had adopted the Uniform Marriage Evasion Act, which provided that if any person residing in this state, who is disabled or prohibited from contracting marriage under the laws of this state, goes into another state and there contracts a marriage prohibited and declared void by the laws of Wisconsin, such marriage is null and void in this state. There was a question in the application for the marriage license reading as follows:

"Question. Are you or ——————— prohibited from intermarrying by the laws of the jurisdiction where you or —he resides? Answer: ———"

.This question was unanswered in the application. Because of that fact also, the objector asked the trial court to infer that the parties, who lived in Wisconsin and who intended to return to Wisconsin, went to Illinois for the purpose of evading the laws of this state. The trial court ruled that the objector, a layman, was not qualified to testify as to whether or not his brother had a venereal disease. In this the trial court was correct. 2 Jones, Evidence, Civil Cases (4th ed.), p. 673, sec. 360a.

It was the testimony of the administratrix that upon reaching Waukegan, they proceeded immediately to a doctor's office where Mr. Campbell received a doctor's certificate, and they then went to get the marriage license. She further testified that they answered all questions that were asked of them. There was a provision in the Illinios statutes in 1931 that the officer having authority to issue a marriage license should satisfy himself by affidavit or otherwise that persons who resided and intended to continue to reside in another state were not prohibited from intermarrying by the laws of that jurisdiction. The administratrix contends that the county clerk did satisfy himself that the parties were not prohibited from intermarrying in Wisconsin, and that the issuance of the license carries with it the presumption of regularity.

In 1 Jones, Evidence, Civil Cases (4th ed.), p. 150, sec. 86, it is stated:

"The considerations which support . . . the presumption of regularity of official and other lawful acts—coupled with the general public policy to preserve and protect marriage and the home—give rise to a presumption that a marriage which is shown to have been solemnized was legally and properly performed, that the parties had legal capacity, and that the marriage is valid. . . . In short, every reasonable presumption is indulged in favor of the validity of the marriage. . . ."

The record discloses a valid marriage in Illinois, and there is no credible evidence therein to invalidate it.

In the case of *Lyannes v. Lyannes* (1920), 171 Wis. 381, 177 N. W. 683, the parties were married in Michigan, although both at the time were residents of Wisconsin, intended to continue to reside in Wisconsin, and in fact did reside in Wisconsin after the marriage. In applying for the marriage license in Michigan, the defendant falsely stated that both parties were over twenty-one years of age, although plaintiff was twenty and defendant was eighteen. The parents of neither had given their consent to the marriage and the defendant had failed to submit to a physical examination for the purpose of determining whether or not he was afflicted with a venereal disease. Upon those facts the plaintiff commenced an action to annul the marriage, pleading the Marriage Evasion Law. This court held that neither the marriage-license laws of Wisconsin requiring the consent of the parents of a male minor nor the statute providing for an antenuptial physical examination of applicants for a license to marry within the state, has extraterritorial effect.

Marriages valid where celebrated are valid everywhere, except those contrary to the law of nature and those which the law has declared invalid upon the ground of public policy. *Lanham v. Lanham* (1908), 136 Wis. 360, 117 N. W. 787; *Owen v. Owen* (1922), 178 Wis. 609, 190 N. W. 363.

In 1931, sec. 69.48, Stats., provided:

"When parties living in this state shall go out of it to be married, and shall return to it to reside, they shall obtain from the county clerk of the county in which either of them resided prior to their marriage, a blank certificate of marriage which they shall cause to be properly filled out and filed with the local registrar of vital statistics of the city . . . wherein they reside, within ten days after their return."

This section was not complied with following the marriage in Waukegan; it could not, however, invalidate a marriage that was valid in Illinois. It was repealed in 1943.

Other claims are made that the marriage was invalid because not in compliance with the Wisconsin statutes. For example, our statutes require two witnesses to the marriage ceremony, whereas the certificate in Illinois was signed by only one witness. However, in 1931 the laws of Illinois did not require any witnesses to a marriage ceremony.

The record discloses that on September 19, 1931, both parties to the marriage were single, each was of proper age and mentally competent. There is no credible evidence to indicate that either of the parties was disabled or prohibited from being married under the laws of this state, or that the marriage in Illinois was for the purpose of evading any provision of the Wisconsin statutes.

*By the Court.*—Judgment and order affirmed.