Estate of Ferguson: Braden, Guardian, Appellant, v. Ferguson, Administratrix, Respondent.*

*September 3—September 29, 1964.*

* Motion for rehearing denied, with costs, on November 24, 1964.

For the appellant there were briefs by *Genoar & Braden* and *Berwyn B. Braden,* all of Lake Geneva, and oral argument by *Berwyn B. Braden.*

For the respondent there was a brief and oral argument by *John Morrissy* of Lake Geneva.

HALLOWS, J.   The issue on this appeal is whether a marriage performed in another state between a nonresident woman and a Wisconsin resident is subject to the provisions of sec. 245.10, Stats.   This section [1] provides *inter alia* when either applicant for a marriage license has a minor child of a prior marriage who is not in his custody and which he is under an obligation to support by court order that no license shall be issued without an order of the court having jurisdiction in the county in which the marriage license is applied for.

[1] "245.10 PERMISSION OF COURT REQUIRED FOR CERTAIN MARRIAGES.  When either applicant has minor issue of a prior marriage not in his custody and which he is under obligation to support by court order or judgment, no license shall be issued without the order of a court having divorce jurisdiction in the county of application.  The court, within 5 days after such permission is sought by verified petition in a special proceeding, shall either grant such order or direct a court hearing to be held in the matter to allow said applicant to submit proof of his compliance with such prior court obligation.  No such order shall be granted, or hearing held, unless both applicants for such license appear, and unless the person, agency, institution, welfare department or other entity having the legal or actual custody of such minor issue is given notice of such proceeding by personal service of a copy of such petition at least 5 days prior to the court order or hearing, unless such appearance or notice has been waived by the court upon good cause shown.  Upon the hearing, if said applicant submits such proof and makes a showing that such children are not and are not likely to become public charges, the court shall grant such order, a copy of which shall be filed in any prior divorce action of such applicant in this state affected thereby; otherwise permission for a license shall be withheld until such proof is submitted and such showing is made, but any court order withholding such permission is an appealable order.  Any marriage contracted without compliance with this section, where such compliance is required, shall be void, whether entered into in this state or elsewhere."

The facts are simple and admitted. Stanley E. Ferguson, the deceased, and Ethyle A. Ferguson were divorced on January 19, 1961. The custody of a minor son, the appellant Stuart Lawrence Ferguson, was awarded to the mother and Stanley E. Ferguson was ordered to pay $175 monthly support. At the time of the divorce and at all subsequent times Stanley Ferguson was a resident of Lake Geneva, Wisconsin, and faithfully made the support payments. On March 7, 1962, at Battle Creek, Michigan, he married Mildred Louderback, a resident of Illinois. After the marriage ceremony the Fergusons lived at Lake Geneva, Wisconsin. Approximately four months later on July 21, 1962, Stanley Ferguson died.

No action by Ferguson was taken prior to his second marriage to comply with sec. 245.10, Stats., and Mildred Ferguson was not aware of the existence of sec. 245.10. It is not in the record whether or not the deceased knew of sec. 245.10 which was first enacted in 1959. It is stipulated Stuart was not likely to become a public charge.

The trial court held the marriage of Stanley Ferguson and the respondent was not void but voidable and, therefore, was not subject to collateral attack or to being set aside after the death of one of the parties. The appellant argues this ruling is error and the marriage is void because of noncompliance with sec. 245.10, Stats., which should be given extraterritorial effect.

The legislative history and an analysis of sec. 245.10, Stats., make it clear the section can be given no extraterritorial effect. This section was originally created by ch. 595, sec. 17, Laws of 1959, to become effective January 1, 1960. In its then form it provided no license to marry should be issued when it appeared that either applicant had a minor of a previous marriage not in his custody and which he was under obligation to support by court order or judgment without the written permission of a judge of a

court having divorce jurisdiction in the county in which the license was applied for. Provision was made for a court hearing and the submission of proof of compliance with the prior court obligation. Upon such hearing the applicant could either furnish such proof or could show good cause why the marriage license should be issued to him in the absence of proof of compliance. If permission was withheld such order was deemed an appealable order.

This section has to be construed with sec. 245.05, Stats., requiring a marriage license to be obtained from the county clerk and with sec. 245.12 requiring the county clerk to issue a marriage license when the applicable sections were complied with. Under sec. 245.09 the application for a marriage license would disclose the information upon which sec. 245.10 would become applicable and thus it was natural for the prohibition to be placed on the clerk. Nothing in this section as it was created in 1959 contemplates its application to marriages performed outside Wisconsin.

In 1961 the section was repealed and re-created by ch. 505, sec. 11, Laws of 1961. The section is still addressed in effect to the county clerk in prohibiting the issuance of a license. Notice of hearing is now required to be given to the person or agency having custody of the minor and both applicants must appear. The proof for the obtaining of an order is that the minor is not and is not likely to become a public charge. Until such showing is made the court need not make an order for the issuance of the license. A denial of a license is an appealable order. We cannot find an intention of the legislature in these requirements for obtaining a court order for the issuance of a license to marry which requires compliance by a Wisconsin resident outside the state of Wisconsin. The intention of the legislature was not to regulate the issuance of a foreign license to marry by requiring foreign courts to grant such license on Wisconsin public policy nor to endow the denial of such license with the attributes of appealability in that state.

No difficulty would be encountered in the construction of this section were it not for the last sentence added in 1961 providing that any marriage contracted without compliance shall be void whether entered into in this state or elsewhere. We cannot read the language "or elsewhere" as requiring compliance with this section in another state. The affirmative acts required to be done to secure a license to marry may not be possible of performance in the foreign state.

The requirements of sec. 245.10, Stats., in nature are similar to the age requirements of sec. 245.02 and the antenuptial physical examination and tests of sec. 245.06, both of which have been held to have no extraterritorial effect. *Lyannes v. Lyannes* (1920), 171 Wis. 381, 177 N. W. 683. It is true sec. 245.03 (2) making it unlawful for a divorced person to marry again within one year of the granting of the divorce was held to have extraterritorial effect in *Lanham v. Lanham* (1908), 136 Wis. 360, 117 N. W. 787, and a marriage contracted in violation of that section is void. But, such section is prohibitory on the parties and by its terms performance may be secured both within and without the state. We do not hold that the public policy expressed in sec. 245.10 cannot be protected or promoted by the nonrecognition of the validity of foreign marriages entered into by Wisconsin residents. We merely hold the present language of sec. 245.10 does not accomplish that purpose.

We consider sec. 245.04, Stats., has no application to sec. 245.10. The former section applies to certain marriages contracted outside the state to circumvent Wisconsin laws. It provides that when a person residing and continuing to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state goes to another state and there contracts a marriage which would be prohibited or void under the laws of this state, such mar-

riage shall be void in this state. However, this section only applies to marriages contracted outside the state without compliance with those Wisconsin laws which have extra-territorial effect. *Lyannes v. Lyannes, supra.*

We consider the marriage between the respondent and the deceased as being valid and sec. 245.10, Stats., as having no application thereto. This view requires an affirmance of the trial court.

*By the Court.*—Orders affirmed.

GORDON, J. (*dissenting*). I respectfully dissent. Stanley Ferguson was at all times a resident of Walworth county, Wisconsin. Immediately after a Michigan marriage, which he entered into in contravention of sec. 245.10, Stats., he returned to Wisconsin to continue living in this state.

In furtherance of its public policies, Wisconsin has plenary control over the marital status of its own residents. *Estate of Campbell* (1952), 260 Wis. 625, 631, 51 N. W. (2d) 709; *Peterson v. Widule* (1914), 157 Wis. 641, 147 N. W. 966; *Lanham v. Lanham* (1908), 136 Wis. 360, 117 N. W. 787. In the latter case, this court said, at page 365:

"A state undoubtedly has the power to declare what marriages between its own citizens shall not be recognized as valid in its courts, and it also has the power to declare that marriages between its own citizens contrary to its established public policy shall have no validity in its courts, even though they be celebrated in other states under whose laws they would ordinarily be valid. *In this sense, at least, it has power to give extraterritorial effect to its laws.* The intention to give such effect must, however, be quite clear. So the question must be, in the present case, whether our legislature by the act quoted declared a public policy and clearly indicated the intention that the law was to apply to its citizens wherever they may be at the time of their marriage." (Emphasis added.)

A similar view is taken in Restatement, Conflict of Laws, p. 197, sec. 132, wherein the following appears:

"A marriage which is against the law of the state of domicil of either party, though the requirements of the law of the state of celebration have been complied with, will be invalid everywhere in the following cases:

". . .

"(d) marriage of a domiciliary which a statute at the domicil makes void even though celebrated in another state."

The statute in question, sec. 245.10, is clearly designed to have extraterritorial effect, since on its face it applies to a marriage "whether entered into in this state or elsewhere." The majority's circumvention of this explicit provision is incomprehensible to me. To support its view, the majority opinion examines the legislative history of sec. 245.10. However, there is no propriety in the court's searching for the legislature's meaning because the words of the statute ("in this state or elsewhere") are unambiguous. There is simply no room for construction. *Estate of Ries* (1951), 259 Wis. 453, 459, 49 N. W. (2d) 483; *State ex rel. U. S. F. & G. Co. v. Smith* (1924), 184 Wis. 309, 316, 199 N. W. 954; *United States v. Goldenberg* (1897), 168 U. S. 95, 103, 18 Sup. Ct. 3, 42 L. Ed. 394.

Sec. 245.04 (1), Stats., provides as follows:

"If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state goes into another state or country and there contracts a marriage prohibited or declared void under the laws of this state, such marriage shall be void for all purposes in this state with the same effect as though it had been entered into in this state."

In *Lyannes v. Lyannes* (1920), 171 Wis. 381, 397, 177 N. W. 683, the foregoing statute was deemed inapplicable where the particular Wisconsin statute which had been vio-

lated was not intended to have extraterritorial effect. However, in the case at bar, there can be no doubt that sec. 245.10, Stats., was so designed. The opinion of the majority denies extraterritorial effect to sec. 245.10, even though the statute itself expressly provides for it. The majority likens sec. 245.10 to secs. 245.02 and 245.06; this is wrong because the latter statutes do not call for extraterritorial effect but the former expressly provides therefor on its face. The legislature has said, in words almost of one syllable, that sec. 245.10 shall apply to marriages entered into "in this state or elsewhere;" the majority opinion states that the court cannot read such language as "requiring compliance with this section in another state."

The learned trial judge held that in the instant case "void" means "voidable." The legislature, using words incapable of doubt, had directed just the contrary. Sec. 245.002 (3), Stats., governs the case at bar and provides as follows: "In this title 'void' means null and void and not voidable." Can words be any clearer? Nevertheless, the majority opinion has used a mysterious, restorative pharmacopoeia to resuscitate that which never lived.

I would reverse on the grounds that the purported Michigan marriage was wholly void under the Wisconsin statutes.